# EXHIBIT A



## Service of Process Transmittal Summary

**TO:**    Scott King
Corizon Health, Inc.
103 Powell Court
Brentwood, TN 37027

**RE:**    **Process Served in Missouri**

**FOR:**    Corizon, LLC  (Domestic State: MO)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, vs. CORIZON HEALTH, INC |
| **CASE #:** | 22BACV01701 |
| **PROCESS SERVED ON:** | C T Corporation System, Clayton, MO |
| **DATE/METHOD OF SERVICE:** | By Process Server on 05/26/2022 at 02:33 |
| **JURISDICTION SERVED:** | Missouri |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/26/2022, Expected Purge Date: 05/31/2022 |
| | Image SOP |
| | Email Notification,  Scott King  scott.king@corizonhealth.com |
| | Email Notification,  Tracy Bartoli  tracy.bartoli@corizonhealth.com |
| | Email Notification,  Dawn Mullett  dawn.mullett@corizonhealth.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 120 South Central Avenue |
| | Clayton, MO 63105 |
| | 866-665-5799 |
| | SouthTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                              Thu, May 26, 2022
**Server Name:**                       Martin Hueckel

| Entity Served | CORIZON, LLC |
|---|---|
| Case Number | 22BACV01701 |
| Jurisdiction | MO |

| Inserts | | |
|---|---|---|
|  |  |  |





# IN THE 13TH JUDICIAL CIRCUIT, BOONE COUNTY, MISSOURI

| Judge or Division:<br>JOSHUA CALVIN DEVINE | Case Number: **22BA-CV01701** |
|---|---|
| Plaintiff/Petitioner:<br>THE CURATORS OF THE U OF MO | Plaintiff's/Petitioner's Attorney/Address<br>PATRICK JOSEPH STUEVE<br>460 NICHOLS RD, SUITE 200<br>KANSAS CITY, MO 64112 |
| vs. | |
| Defendant/Respondent:<br>CORIZON HEALTH INC- CT CORP | Court Address:<br>705 E Walnut<br>COLUMBIA, MO 65201 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  **CORIZON, LLC**
Alias:

CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVE.
CLAYTON, MO 63105

*COURT SEAL OF*

*BOONE COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| 05-23-2022 | /s/ D. Roop |
|---|---|
| Date | Clerk |

Further Information:

## Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.
☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.
☐ (for service on a corporation) delivering a copy of the summons and petition to:
_____ (name) _____ (title).
☐ other: _____

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____  _____
Printed Name of Sheriff or Server  Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____  _____
Date  Notary Public

**Sheriff's Fees, if applicable**

| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| **Total** | $_____ | |

A copy of the summons and petition must be served on each defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

SJRC (07-21) SM30 (SMCC) *For Court Use Only:* Document ID #: 22-SMCC-413   1 of 1 (22BA-CV01701)   Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 2:22-cv-04100-NKL   Document 1-1   Filed 06/27/22   Page 4 of 50

Electronically Filed - Boone - May 11, 2022 - 02:02 PM

IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | | |
|---|---|---|
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. _____ |
| v. | ) ) | Division _____ |
| CORIZON HEALTH, INC., and CORIZON, LLC, | ) ) ) ) | |
| Serve: C T CORPORATION SYSTEM 120 South Central Ave Clayton, MO 63105 | ) ) ) ) | |
| Defendants. | ) ) | |

## PETITION

Plaintiffs The Curators of The University of Missouri on behalf of University of Missouri Health Care and University Physicians ("University"), and Capital Region Medical Center ("Capital Region") (collectively, "Hospital" or "Plaintiffs"), by and through undersigned counsel, hereby allege as follows against Defendants Corizon Health, Inc. and Corizon, LLC (collectively, "Corizon Health" or "Defendants"):

## PARTIES

1.      Plaintiff The Curators of The University of Missouri is the state university recognized by Article IX, Sections 9(a) and 9(b) of the Missouri Constitution and incorporated by RSMo § 172.020. The Curators of the University of Missouri operates University Physicians and University of Missouri Health Care as part of its academic health system based in Columbia, Missouri. University includes accredited healthcare facilities that are authorized to operate as hospitals in the State of Missouri.

2.      Plaintiff Capital Region Medical Center is a nonprofit corporation organized under the laws of the State of Missouri with its principal place of business in Jefferson City, Missouri. Capital Region is an affiliate of University (as defined in the Agreement at Exhibit A p. 1, ¶ 1.2, referenced below) and operates an accredited healthcare facility authorized to operate as a hospital in the State of Missouri.

3.      Defendant Corizon Health, Inc. is a Delaware corporation with its principal place of business in Brentwood, Tennessee. Corizon Health, Inc. is engaged in the business of practicing medicine and providing correctional healthcare throughout the United States, including in the State of Missouri. Corizon Health, Inc. is licensed to and doing business in Missouri and can be served with process through its registered agent: CT Corporation System, 120 South Central Avenue, Clayton, Missouri, 63105.

4.      Defendant Corizon, LLC is a Missouri limited liability company licensed to and doing business in Missouri and can be served with process through its registered agent: CT Corporation System, 120 South Central Avenue, Clayton, Missouri, 63105. Upon information and belief, Corizon, LLC is a wholly owned subsidiary of Corizon Health, Inc., and Corizon Health, Inc. is Corizon, LLC's sole member.

5.      Upon information and belief, Corizon Health, Inc. dominates, controls, and directs the operations of Corizon, LLC. In both the Agreement with Plaintiffs and nationwide, Corizon Health, Inc. and Corizon, LLC hold themselves out as a single enterprise and single entity despite the technical existence of separate corporate entities. Defendants maintain a single website in which they promote themselves as a single entity interchangeably referred to as "Corizon Health" or "Corizon," without regard to their corporate forms.[1] Consistent with this practice, Corizon, LLC

---

[1] *See* http://www.corizonhealth.com/ (last accessed April 27, 2022).

refers to itself as "Corizon Health" in its Agreement with Plaintiffs. *See* Agreement, Ex. A, referenced below. Likewise, Corizon, LLC's principal office, as listed in the Agreement, is the same as Defendant Corizon Health, Inc.'s corporate headquarters: 103 Powell Court, Suite 104 in Brentwood, Tennessee. *See* Agreement, Ex. A, p. 1, 13, referenced below. Further, upon information and belief, Defendants utilize, or have utilized, a Missouri office as their joint "operational headquarters"[2] for their nationwide operations.

6.      Upon information and belief, there is a commonality of management between and among Defendants. For example, pursuant to the terms of the Agreement, notices to Corizon, LLC were to be sent to Defendants' shared Brentwood, Tennessee address, with attention to Corizon, LLC's "Supervisor of Network Development," an individual listed as "Corizon's" "Director of Network Development and Purchasing" on Defendants' website.[3]

7.      For these reasons, Corizon, LLC is a mere instrumentality or adjunct of Corizon Health, Inc., which together form a single, unified enterprise. Corizon Health, Inc. controls and dominates the affairs of Corizon, LLC such that it is the legal "alter ego" of Corizon, LLC.

### JURISDICTION AND VENUE

8.      Jurisdiction and venue are proper in this Court.

9.      This Court has personal jurisdiction over Defendants pursuant to RSMo § 506.500(1) and/or (2) because the claims alleged herein against Defendants arise from Defendants' (1) transaction of business within Missouri and (2) making of contracts within Missouri.

---

[2]      *See*   http://www.corizonhealth.com/Corizon-News/Corizon-Launches-From-Correctional-Healthcare-Merger1 (last accessed April 27, 2022) (listing a St. Louis, Missouri office as "Corizon's" "operational headquarters"); http://www.corizonhealth.com/Corizon-News/Corizon-Announces-New-Chief-Human-Resources-Officer1      (last accessed April 27, 2022) (listing a St. Louis, Missouri office as "Corizon's" "operations headquarters").

[3]      http://www.corizonhealth.com/index.php/S=0/Corizon-News/connections/carla-copeland-promoted-to-director-of-network-development-and-purchasing (last accessed April 27, 2022).

3

10.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to Article V, § 14(a) of the Missouri Constitution.

11.     Venue is proper in this Court pursuant to RSMo § 508.010.2(1) because University resides in and Defendants may be found in Boone County, Missouri.

12.     This case is not removable to federal court because diversity jurisdiction under 28 U.S.C. 1332(a) does not exist. Plaintiff The Curators of the University of Missouri is an "arm of the State of Missouri," and thus is not a "citizen" of a different state for diversity jurisdiction under 28 U.S.C. § 1332(a). *See Sherman v. Curators of Univ. of Mo.*, 871 F. Supp. 344, 346, 348 (W.D. Mo. 1994) (determining the University is a state instrumentality acting as an arm of the State of Missouri and enjoys Eleventh Amendment protection); *Brantl v. Curators of Univ. of Missouri*, 616 S.W.3d 494, 501 (W.D. Mo 2020) ("Missouri's federal courts have uniformly held that the University is a state instrumentality acting as an arm of the State of Missouri").

13.     This case is likewise not removable to federal court because Plaintiffs do not assert any federal question.

## FACTUAL ALLEGATIONS

14.     On November 1, 2016, Corizon Health and Hospital entered into a Hospital Services Agreement (the "Agreement"). The Agreement is attached hereto as **Exhibit A**, including amendments thereto, but is in a redacted format, as are references to the Agreement cited herein, because the Agreement contains a confidentiality provision. Hospital contends this Petition, and the Agreement, should be filed unredacted in the public record, and is prepared to do so upon waiver of the confidentiality provision by Corizon Health or as otherwise ordered by the Court.

15.     According to the Agreement, the Missouri Department of Corrections and Corizon Health entered into a separate agreement whereby Corizon Health would provide or arrange for

4

the provision of health care services to certain inmates and detainees under the control of the Missouri Department of Corrections.

16.    Under the Agreement between Corizon Health and Hospital, Hospital would "provide Health Care Services to Patients" in exchange for compensation from Corizon Health. *See* Ex. A at pp. 3-8 & Attachment IV.

17.    "Patient" is defined under the Agreement as "those correctional facility inmate patients or detainees in the custody of the [Missouri Department of Corrections] for whom Corizon Health has contracted to provide or arrange for the provision of Health Care Services pursuant to the Corizon Health/[Missouri Department of Corrections] Contract." *Id.* at p. 3, ¶ 1.11.

18.    "Health Care Services" is defined under the Agreement as "the medical and other related services, including both inpatient and outpatient care, provided to a Patient by Hospital or Hospital-affiliated health care professional, which are Medically Necessary and are requested by Corizon Health contracted on-site physicians or providers or that constitute Emergency Services." *Id.* at p. 2, ¶ 1.6.

19.    "Completed Claim" is defined under the Agreement as:

a timely claim submitted on an industry standard claim form (CMS-1500 or UB-04 or equivalent successor), for reimbursement of Health Care Services which is consistent with the definition of a clean claim in the Missouri Revised Statute 376.383 and contains at least the following information:

1) Patient (Inmate) name and Department of Correction or Booking Identification number (Inmate Number).
2) Name and Address of Correctional Facility from which the inmate was transported.
3) Patient Date of Birth.
4) Date(s) of Service.
5) Hospital Name, Address, Phone number, and Tax Identification number.
6) ICD-9, ICD-10 or successor Diagnostic and Surgical Procedure codes and descriptions.

5

7) Current industry standard procedure coding (UB-04 Revenue Codes, DRG, HCPCS and CPT codes as appropriate or equivalent successor forms or code sets) and descriptions.
8) Detailed billing of charges and units.

*Id.* at p. 2, ¶ 1.5.

20. Corizon Health agreed to reimburse Hospital for Health Care Services for Patients admitted or brought to Hospital for either inpatient or outpatient care by or at the direction of Corizon Health. *Id.* at p. 5, § 3.

21. Hospital was to "submit Completed Claims to Corizon Health on the approved hospital billing form within one hundred and twenty (120) days of date of service rendered to the Patient or Corizon Health will have no obligation to pay." *Id.* at p. 7, ¶ 3.3.2; *id.* at Second Amendment at p. 1, ¶ 1.

22. Completed Claims were to "be sent to the following address:"

Corizon Health accepts the electronic filing of claim forms. When submitting UB-04, or equivalent successor forms via an electronic format, Hospital should use the Corizon Health payer identification number 43160.

Or

Corizon Health
P.O. Box 981639
El Paso, TX 79998

*Id.* at p. 7, ¶ 3.3.1.

23. Hospital was to "use the most current procedural (CPT) and HCPCS codes on all forms" and "abide by all AMA/CPT code billing standards, CMS guidelines, rules and regulations that are applicable (including inclusive procedure codes, prospective payment system OPPS and/or automated payment classification APC)." *Id.* at p. 7, ¶ 3.3.3.

24. Corizon Health agreed that "Completed Claims shall be paid within sixty (60) days." *Id.* at p. 7, ¶ 3.1.3.

6

25.     Further, the Agreement provides, "in the event payment is not made within such sixty (60) day time period, an interest charge of one percent (1%) of the claim per month shall be paid." *Id.*

26.     The Agreement "may be amended only by written agreement signed by the Parties." *Id.* at p. 12, ¶ 7.2. And the Agreement, inclusive of any and all amendments, attachments and exhibits "constitutes the entire understanding and agreement between the parties with regard to the subject matter." *Id.* at p. 12, ¶ 7.4. "No other prior or contemporaneous promise, obligation, statement or understanding between the parties, whether written or oral, shall be valid or binding." *Id.*

27.     "For conflict of law purposes, the laws of the State of Missouri shall apply in interpreting the terms" of the Agreement. *Id.* at p. 14, ¶ 7.13.

28.     In accordance with the Agreement, Hospital provided Health Care Services to Patients and submitted Completed Claims to Corizon Health on approved hospital billing forms within one hundred and twenty (120) days of the date of service rendered to Patients.

29.     Additionally, Hospital used the most current procedural (CPT) and HCPCS codes on the forms and abided by all AMA/CPT code billing standards, CMS guidelines, rules and regulations that are applicable (including inclusive procedure codes, prospective payment system OPPS and/or automated payment classification APC).

30.     Beginning in 2020, Corizon Health did not pay Hospital for all Completed Claims submitted to Corizon Health.

31.     Hospital notified Corizon Health of its failure to timely pay Completed Claims pursuant to the Agreement. *See id.* at p. 13, ¶ 7.9.

32. Corizon Health informed Hospital that it would pay the outstanding Completed Claims, including interest at the rate of one percent (1%) per month.

33. Nevertheless, Corizon Health has not paid Hospital for outstanding Completed Claims totaling in excess of $12,000,000.00, including interest at the rate of one percent (1%) per month that continues to accrue.

34. Corizon Health has admitted to Hospital that it is in default on Hospital's outstanding Completed Claims referenced herein.

## COUNT I: BREACH OF CONTRACT

35. Plaintiffs reallege and incorporate by reference each and every allegation in the previous paragraphs as though fully set forth herein.

36. Plaintiffs and Defendants are parties to a valid and enforceable contract, the Agreement (Exhibit A).

37. Plaintiffs substantially performed their obligations under the terms of the Agreement.

38. Plaintiffs timely submitted Completed Claims to Corizon Health pursuant to the terms of the Agreement.

39. Corizon Health failed to timely pay Plaintiffs all outstanding submitted Completed Claims, including interest due and owing under the Agreement.

40. As such, Corizon Health's non-payment of outstanding Completed Claims, including interest at the rate provided in the Agreement, constitutes breaches of the Agreement.

41. As a direct and proximate result of Corizon Health's breaches of the Agreement, Plaintiffs have sustained damages that are continuing in nature in an amount to be determined at trial.

8

## COUNT II: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

42.     Alternatively, Corizon Health breached the implied covenant of good faith and fair dealing.

43.     Plaintiffs reallege and incorporate by reference paragraphs 1-34 as though fully set forth herein.

44.     Plaintiffs and Defendants are parties to a valid and enforceable contract, the Agreement (Exhibit A).

45.     Plaintiffs timely submitted Completed Claims to Corizon Health for Health Care Services provided to Patients in accordance with the terms of the Agreement.

46.     Plaintiffs expected to receive payment for the Completed Claims submitted to Corizon Health.

47.     Despite Plaintiffs' expectation of payment for the Completed Claims, Corizon Health decided to withhold payment from Plaintiffs.

48.     Corizon Health's decision to withhold payment for Completed Claims evades the spirt of the Agreement so as to deny Plaintiffs the expected benefit of payment for Completed Claims for Health Care Services provided to Patients.

49.     As a result of the aforementioned conduct, Corizon Health breached the Agreement's implied covenant of good faith and fair dealing.

50.     Accordingly, Corizon Health's breach of the implied covenant of good faith and fair dealing directly and proximately caused Plaintiffs' damages that are continuing in nature in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief and judgment against Corizon Health as follows:

9

(a)      For a judgment against Corizon Health for the causes of action alleged against it;

(b)      For damages in an amount to be proven at trial;

(c)      For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(d)      For Plaintiffs' costs incurred; and

(e)      For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: May 11, 2022                  Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ Patrick J. Stueve*
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

**COUNSEL FOR PLAINTIFFS THE
CURATORS OF THE UNIVERSITY OF
MISSOURI AND CAPITAL REGION
MEDICAL CENTER**

10

# EXHIBIT A

Electronically Filed - Boone - May 11, 2022 - 02:02 PM

## HOSPITAL SERVICES AGREEMENT

### Between

### CORIZON, LLC.

### And

### UNIVERSITY OF MISSOURI HEALTH \

This Agreement is made and entered into this 1st day of November, 2016 (hereinafter the "Effective Date"), by and between Corizon, LLC, a Limited Liability Company with principal offices located at 103 Powell Court, Suite 104, Brentwood, TN, 37027, (hereinafter collectively referred to as "Corizon Health") and The Curators of the University of Missouri on behalf of University of Missouri Health and its affiliates (hereinafter referred to as "Hospital"), a health care provider located at 1 Hospital Dr., Columbia, MO 65201 (hereinafter collectively referred to as the "Parties").

### WITNESSETH:

**WHEREAS,** Corizon Health has a contract to provide or arrange for the provision of Health Care Services to certain inmates and detainees under the control of the Missouri Department of Corrections (hereinafter referred to as "Client"). In certain circumstances, it is necessary for Corizon Health to utilize hospital services for its Patients for both inpatient and outpatient care; and

**WHEREAS,** Hospital is an accredited hospital facility in the State of Missouri, which is capable and willing to provide Health Care Services to the prison/jail community; and

**WHEREAS,** Corizon Health desires to engage Hospital and Hospital desires to contract with Corizon Health to provide Health Care Services to inmates and detainees in the custody of the Client, as specified and on the terms and conditions set forth herein (hereinafter the "Agreement").

**NOW THEREFORE,** for and in consideration of the mutual covenants and promises as are hereinafter set forth and other good and valuable consideration, the sufficiency of which is hereby acknowledged by the Parties, Corizon Health and Hospital hereby agree as follows:

### SECTION 1
### Definitions

1.1    **Affiliated Entity** means any entity who directly or indirectly through one (1) or more intermediaries, controls, or is controlled by, or is under common control with, Corizon Health.

1.2    **Capital Region** means Capital Region Medical Center and Capital Region Physicians (Tax ID 44-0546366), affiliates of University of Missouri Health.

1

1.3 **Corizon Health/Client Contract** means the agreement entered into between Corizon Health and the Client whereby Corizon Health has agreed to provide or arrange for the provision of Health Care Services to the inmates and detainees in the custody of the Client.

1.4 **Corizon Health's Medical Director** means the physician designated as the Corizon Health Medical Director for the correctional facility or facilities served under the Corizon Health/Client Contract.

1.5 **Completed Claim** means a timely claim submitted on an industry standard claim form (CMS-1500 or UB-04 or equivalent successor), for reimbursement of Health Care Services which is consistent with the definition of a clean claim in the Missouri Revised Statute 376.383 and contains at least the following information:

1) Patient (Inmate) name and Department of Correction or Booking Identification number (Inmate Number).
2) Name and Address of Correctional Facility from which the inmate was transported.
3) Patient Date of Birth.
4) Date(s) of Service.
5) Hospital Name, Address, Phone number, and Tax Identification number.
6) ICD-9, ICD-10 or successor Diagnostic and Surgical Procedure codes and descriptions.
7) Current industry standard procedure coding (UB-04 Revenue Codes, DRG, HCPCS and CPT codes as appropriate or equivalent successor forms or code sets) and descriptions.
8) Detailed billing of charges and units.

1.6 **Health Care Services** means the medical and other related services, including both inpatient and outpatient care, provided to a Patient by Hospital or a Hospital-affiliated health care professional, which are Medically Necessary and are requested by Corizon Health contracted on-site physicians or providers or that constitute Emergency Services.

1.7 **Health Services Administrator (HSA)** means the Corizon Health employee responsible for managing the medical program for the correctional facility or facilities served under the Corizon Health/Client Contract.

1.8 **Emergency Medical Condition** per Missouri Revised Statute 376.1350 means the sudden and, at the time, unexpected onset of a health condition that manifests itself by symptoms of sufficient severity that would lead a prudent lay person, possessing an average knowledge of medicine and health, to believe that immediate medical care is required, which may include, but shall not be limited to:
    (a) Placing the person's health in significant jeopardy;
    (b) Serious impairment to a bodily function;
    (c) Serious dysfunction of any bodily organ or part; or
    (d) Inadequately controlled pain.
    (e) With respect to a pregnant woman who is having contractions:
        (i) That there is inadequate time to effect a safe transfer to another hospital before delivery; or

2

(ii) That transfer to another hospital may pose a threat to the health or safety of the woman or unborn child.

1.9 **Emergency Services** means those Health Care Services, which are Medically Necessary and provided for the treatment of an Emergency Medical Condition.

1.10 **Medically Necessary** describes those medical, surgical or other health-related services or supplies which are determined to be: (a) appropriate for the symptoms and diagnosis or treatment of the Patient's medical condition, illness, disease or injury; (b) provided for the diagnosis or care and treatment of the Patient's medical condition; (c) in accordance with local standards of acceptable medical care; (d) not elective or cosmetic or primarily for the convenience of the Patient, the Hospital or any medical provider; and (e) the most appropriate and available supplier level of service that can be safely provided to the Patient and is consistent with local standards of acceptable medical care.

1.11 **Patient** means those correctional facility inmate patients or detainees in the custody of the Client for whom Corizon Health has contracted to provide or arrange for the provision of Health Care Services pursuant to the Corizon Health/Client Contract.

1.12 **Primary Payor:** Entity that has the initial obligation to pay a claim for Health Care Services for Patient.

1.13 **Provider-Preventable Condition (PPC)** means current list of Medicare Hospital-Acquired Conditions (HACs).

1.14 **Restricted Area** means all counties listed on Attachment III.

1.15 **Secondary Payor:** Entity that pays second on a claim for Health Care Services for Patient and their payment is only to the extent that payment has not been made by Primary Payor.

## SECTION 2
### Hospital's Rights and Obligations

2.1 **General Engagement.** Corizon Health hereby engages Hospital to provide Health Care Services to Patients and Hospital hereby accepts such engagement according to the terms and conditions of this Agreement. Inmate transfer travel arrangements will be made by Corizon Health only after approval by Corizon Health's HSA who will coordinate the provision of Health Care Services and the implicated security requirements with the appropriate agency officials.

2.2 **Time and Place of Services.** If Hospital decides voluntarily to add, limit, or discontinue any of the services that it offers, it will provide Corizon Health with written notice of such action at least sixty (60) days prior to such addition, limitation, or discontinuation. If Hospital must involuntarily limit or discontinue any services, it will provide Corizon Health with written notice immediately upon learning of such limitation or discontinuation.

2.3 **Qualifications.** Hospital represents that Hospital is authorized operate as a hospital in the State of Missouri. Hospital also represents that Hospital possesses current and unrestricted controlled substance certification. Hospital shall maintain all federal, state and local licenses,

3

certifications and permits, without material restriction, which are required to provide Health Care Services according to the laws and jurisdiction in which Health Care Services are provided, and shall comply with all applicable statutes and regulations. University Physicians and Capital Region Physicians shall also require that all health care professionals employed by or under contract with their respective organizations possess current and unrestricted licenses as required by law to render Health Care Services to Patients and to comply with this provision. Hospital further agrees to notify Corizon Health within 5 business days if Hospital receives notice of noncompliance with such requirements, conditions, and standards, and if Hospital's status changes in any respect. Hospital shall provide Corizon Health with written documentation of Hospital's current JCAHO accreditation upon request. Hospital's failure to meet or maintain all the required qualifications described in this Section may result in immediate termination of this Agreement.

2.4     **Discharge Summaries.** Hospital shall provide a narrative discharge summary and operative report for all Patients receiving inpatient care and a summary discharge statement for all Patients receiving outpatient services at Hospital. These reports will be provided to the Patient as well and shall include a written summary of treatment received and follow-up instructions.

Corizon Health will receive an itemized bill for each such Patient where the payable amount is equal to or in excess of $25,000, whether the services provided are inpatient or outpatient in nature, or both.

Corizon Health shall be entitled to audit any records necessary to insure that services billed to Corizon Health were rendered in accordance with the invoice presented.

2.5     **Utilization Review.** Hospital specifically agrees to make commercially reasonable efforts to comply with the utilization review program, included as Attachment II implemented by Corizon Health on behalf of the Client. Hospital will cooperate with Corizon Health in the implementation of its utilization review program. The Hospital will assist with physician communications regarding each case. Hospital will permit Corizon Health to review Patient hospital stays during and after hospitalization and will provide Corizon Health with access to Patient information useful in ascertaining the Medical Necessity of particular procedures and the length of time of particular stays. Hospital will make available for review by Corizon Health utilization review personnel all records maintained by the Hospital regarding Patients in accordance with Section 6.4 Medical Records. The Hospital's Medical Records Department will honor Corizon Health's utilization review personnel's requests for records in accordance with Section 6.4 Medical Records. Hospital acknowledges and understands that payment for unauthorized or inappropriate services may be adjusted or denied unless otherwise addressed in this Agreement.

2.6     **Treatment Summary and Follow-Up Instructions.** Upon discharge from Hospital, Hospital shall provide a written summary of the treatment provided to the Patient along with written follow-up instructions, if applicable.

2.7     **Quality Assurance.** Hospital shall ensure the application of a quality assurance process that utilizes appropriate quality of care standards. Hospital will also ensure that appropriate

quality assurance review activity, including subsequent action taken by the Hospital, will occur for quality of care issues referred by Corizon Health. Hospital shall make available for review and examination by Corizon Health's Medical Director or his or her designee, upon request, documentation regarding the Hospital's quality assurance activities as they may reasonably relate to Health Care Services rendered to Patients hereunder except to the extent such documents are protected from disclosure under peer review privilege or other legal privilege.

2.8 **Compliance with Applicable Law**. Hospital agrees that all Health Care Services provided by or through Hospital pursuant to this Agreement, and documentation thereof, will be in compliance with applicable law and certification or licensure requirements.

2.9 **Security**. Responsibility for the security of Patients being treated on either an inpatient or outpatient basis at Hospital will be provided by the Client. Neither Corizon Health nor Hospital shall be responsible for providing such security, but both are required to adhere to security regulations established by the Client or such other duly qualified security or law enforcement agency.

2.10 **Staff Privileges.** Hospital hereby agrees that Corizon Health's Medical Director shall be considered for staff privileges at Hospital during the term of this Agreement. Approval for staff privileges shall be determined by the guidelines set by the medical staff by-laws of the Hospital.

### SECTION 3
### Compensation of Hospital

3.1 **Reimbursement for Services.** For any Patient admitted or brought to Hospital for either inpatient or outpatient care by or at the direction of Corizon Health, the following reimbursements shall apply.

    3.1.1 **Inpatient Care.** Corizon Health shall reimburse Hospital for medical charges according to the rates listed in Attachment 1, Attachment 1A Volume Based Compensation Schedule and Attachment 1B Non-Exclusive Compensation Schedule hereby incorporated into and made part of the Agreement.

    3.1.1.1 When Corizon Health is the Primary Payor, the payment from Corizon Health shall be accepted by Hospital as payment in full for all authorized Health Care Services.

    3.1.1.2 Notwithstanding the above, Corizon Health will be considered Secondary Payor to all other possible payors.

    3.1.1.3 Medicaid

        3.1.1.3.1 For Hospitals in states in which Medicaid coverage continues post incarceration, Corizon Health is not responsible for the cost of Health Care Services in the event Patient has Medicaid coverage and the Health Care Services are eligible for payment by Medicaid.

        3.1.1.3.2 For Hospitals in states in which Medicaid coverage terminates upon incarceration, Medicaid is unavailable for Patients and therefore not a source for reimbursement.

5

3.1.1.4 Verification of available benefits will be documented prior to payment by Corizon Health. Corizon Health will coordinate payment up to 100% with any other insurance carrier, provided, however, that in no case shall Corizon Health be responsible for payments beyond its coverage limits.

3.1.1.5 Corizon Health is only responsible for payments of Health Care Services provided to inmates and detainees in the custody of the Client. If the inmate/patient is released from custody of the Client while hospitalized, then Corizon Health will cooperate to the greatest extent possible, to determine the availability of third party reimbursement. Cooperation will include Corizon Health notifying the Hospital of the inmate's release or impending release from Client's custody. Corizon Health will cooperate with Hospital in providing information which will allow the Hospital to seek reimbursement from other parties once the Patient is no longer an inmate.

### 3.1.2 **Outpatient Care.**

All outpatient services including emergency, ancillary, diagnostic or outpatient surgery rendered by Hospital on behalf of a Patient under the care of Corizon Health will be reimbursed according to the rates listed in Attachment I, Attachment 1A Volume Based Compensation Schedule and Attachment 1B Non-Exclusive Compensation Schedule.

3.1.3 **Timely Payment.** Completed Claims shall be paid within sixty (60) days. In addition, in the event payment is not made within such sixty (60) day time period, an interest charge of one percent (1%) of the claim per month shall be paid. However, any claim which has been properly denied before the 45th day shall not be subject to interest or penalties.

3.2 **Provider-Preventable Conditions**. The Parties hereby agree that when a medical condition is not present at the time the Patient is admitted or brought to Hospital for either inpatient or outpatient care but is reported as a secondary diagnosis associated with Hospital's care, Corizon Health's payment to Hospital shall be paid as though the diagnosis for the CMS defined Hospital Acquired Condition is not present and payment will be processed according to CMS guidelines.

6

3.3 **Claims Submission.**

    3.3.1 Completed Claims should be sent to the following address:

        Corizon Health accepts the electronic filing of claim forms. When submitting UB-04, or equivalent successor forms via an electronic format, Hospital should use the Corizon Health payer identification number 43160.

        Or

        Corizon Health
        P. O. Box 981639
        El Paso, TX 79998

    To inquire about the status of claims submitted, please call Corizon Health Customer Service at 888-865-2910. Customer Service hours are Monday through Friday, 7:30 am to 5:30 pm (CST) or 24/7 access may be obtained by accessing the Corizon Provider Portal at www.CorizonHealth.com

    3.3.2 Hospital will submit Completed Claims to Corizon Health on the approved hospital billing form within one hundred and twenty (120) days of date of service rendered to the Patient or Corizon Health will have no obligation to pay.

    3.3.3 Hospital will use the most current procedural (CPT) and HCPCS codes on all forms. Hospital will abide by all AMA/CPT code billing standards, CMS guidelines, rules and regulations that are applicable (including inclusive procedure codes, prospective payment system OPPS and/or automated payment classification APC).

    3.3.4 Guidelines for billing and coverage for services not specifically detailed within this Agreement will be governed by the most current version of the Centers for Medicare and Medicaid Service's guidelines for the Medicare Program.

3.4 **Claim Audits**. Hospital acknowledges and agrees that all Hospital claims may be reviewed by a clinical software system or a nurse analyst and/or claims auditor. In this process, detailed charges are reviewed for improper, inappropriate or erroneous billings. The review process may also include a verification of diagnosis codes in relation to the performed procedures. Corizon Health may request Hospital to provide appropriate documentation to substantiate questioned charges and all itemized services may be analyzed for payment on an individual basis according to the type and location of service being provided. For any claims found to be overpaid, Hospital agrees that Corizon Health may recover overpayment made to Hospital by Corizon Health by offsetting such amounts from later payments to Hospital, including, without limitation, making retroactive adjustments to payments to Hospital for errors

7

and omissions relating to data entry errors and incorrectly submitted claims or incorrectly applied discounts, unless the overpayment is disputed by Hospital.

3.5 **Appeal Process**. In the event that a dispute arises concerning the resolution of a Completed Claim, Hospital may appeal by submitting the dispute to Corizon Health in writing, with supporting documentation, within ninety (90) calendar days following Corizon Health's response or denial of the Completed Claim. Corizon Health shall provide a reply within forty five (45) days following receipt of Hospital's appeal. If Hospital fails to dispute in writing Corizon Health's handling of a Completed Claim within ninety (90) calendar days following receipt of Corizon Health's response, then such claim may be considered waived and Corizon Health shall not be obligated to make any payment or adjustment thereafter.

3.6 **Right of Recovery.** Hospital will not seek reimbursement from the Patient or from the Client without Corizon Health's written consent. Corizon shall have the right to make, and Hospital shall have the right to request, corrective adjustments to a previous payment; provided however, that Corizon shall have no obligation to pay additional amounts after twelve (12) months from the date the initial claim was paid.

Hospital shall have the right to make, and Corizon shall have the right to request, a refund of overpayments; provided however, that Hospital shall have no obligation to refund overpayments after twelve (12) months from the date the initial claim was paid.

3.8 **Changes in the Law.** Hospital agrees to abide by all applicable laws, rules and regulations.

### SECTION 4
### Term and Termination

4.1 **Term**. The term of this Agreement will commence on the Effective Date and will continue in effect for one (1) year ("Initial Term") and shall automatically renew for recurring one (1) year terms thereafter, unless either Party, at least thirty (30) days prior to the expiration date, notifies the other in writing of its desire not to extend or renew this Agreement.

4.2 **Termination**. This Agreement may be terminated as follows:

    4.2.1 **Termination without Cause**. Either party may terminate this Agreement, without cause, by giving the other party written notice of termination, not less than thirty (30) days prior to the effective date thereof.

    4.2.2 **Termination for Cause**. Either party may terminate this Agreement for cause, including but not limited to the occurrence of any of the following events, which has not been cured within thirty (30) days after written notice from the other party.

        4.2.2.1 Either party has breached any of the material terms and conditions of this Agreement or the exhibits or attachments hereto; or

8

4.2.2.2 Any activities or actions of one party that, in the reasonable judgment of the second party, are deemed to be detrimental to the second party.

4.2.3 **Immediate Termination**. Corizon Health may immediately terminate this Agreement upon the occurrence of any of the following events:

4.2.3.1 Hospital's failure to maintain required insurance as provided in this Agreement; or

4.2.3.2 Hospital's inability to meet its obligations pursuant to this Agreement due to financial insolvency, bankruptcy, or lack of capacity to provide Health Care Services; or

4.2.3.3 Hospital is found guilty of a criminal offense; or

4.2.3.4 Hospital is found liable for gross misconduct in providing care.

4.3 **Services Subsequent to Termination**. Following termination of this Agreement, Hospital shall continue to provide services to any inmate who is under active treatment either until such treatments are completed or responsibility is assumed by another participating provider, but not longer than ninety (90) days. Hospital shall be compensated via a single case rate agreement. If a patient is released from custody, Corizon Health will have no obligation to pay for services rendered upon release.

## SECTION 5
## Insurance and Indemnification

5.1 **Insurance.** At all times during the term of this Agreement and any renewals hereof, Hospital shall maintain or cause to be maintained adequate professional liability insurance policies or self-funded coverage with limits of not less than one million dollars ($1,000,000) per occurrence and three million dollars ($3,000,000) in annual aggregate, and such coverage shall provide occurrence-based coverage, or if it provides claims-made coverage, Hospital agrees that upon the expiration or termination of this Agreement for any reason, Hospital will maintain coverage for any liability directly or indirectly resulting from Hospital's provision of services in connection with this Agreement, or any other acts or omissions of Hospital occurring in whole or in part during the term of this Agreement (hereinafter "Continuing Coverage"). Hospital may procure Continuing Coverage by obtaining subsequent policies which have a retroactive date of coverage equal to the Effective Date of this Agreement, by obtaining an extended reporting endorsement ("tail") applicable to the insurance coverage maintained by Hospital during the term of this Agreement, or by such other methods as are mutually agreed upon by Hospital and Corizon Health. In addition, Hospital agrees to procure and maintain, at its sole expense, such comprehensive general and/or umbrella liability insurance or self-funded coverage as Hospital shall reasonably deem necessary to cover its potential general liability risk exposure. Hospital shall require all health care professionals employed by or under contract with Hospital to procure

9

or maintain the same limits of professional liability insurance as set forth above, unless such professionals are covered under Hospital's insurance policy or self-funded coverage.

The insurance or self-funded coverage obtained pursuant to this Section, including any Continuing Coverage, will cover all employees, including contracted employees of Hospital who provide Health Care Services to Patients, against any and all claims, actions, judgments, liabilities, losses, damages, costs, and obligations (including attorney's fees) which are attributable to or which arise, directly or indirectly, out of any act or omission by Hospital's employees, including contracted employees. Without limiting the obligations of Hospital under this Section, the insurance or self-funded coverage maintained or caused to be maintained pursuant to this Section will provide coverage against civil actions against Hospital's employees based on medical treatment brought under 42 U.S.C. § 1983, and as that statute may be amended, modified, recodified, or succeeded in the future. The obligations of this Section concerning Continuing Coverage shall survive termination of this Agreement.

5.2 **Corizon Health's Insurance**. At all times during the term of this Agreement and any renewals hereof, Corizon Health shall maintain policies of insurance or self-insurance providing coverage for general liability and professional liability as Corizon Health determines may be necessary to protect Corizon Health or its employees, agents, or representatives in the discharge of it's or their duties under this Agreement. The limits of the professional liability coverage provided by Corizon Health shall be equal to those required of Hospital under this Agreement.

5.3 **Certifications.** Hospital shall, within ten (10) days after execution of this Agreement and on an annual basis thereafter, provide to Corizon Health certificates issued by an insurance carrier or its agent or other evidence of insurance as required under this Agreement. Hospital shall provide Corizon Health with at least thirty (30) days prior written notice of any modification, cancellation, or non-renewal of such policies.

## SECTION 6
### Relationship of the Parties

6.1 **Relationship of the Parties**. The relationship of Hospital to Corizon Health is that of independent contractor. Nothing contained herein shall create an employer-employee, principal-agent, or partnership relationship between Corizon Health and Hospital or between Corizon Health and any employee, agent, or physicians of Hospital. Corizon Health shall not exercise control or direction over the manner in which Hospital or any employee, agent, or physician of Hospital renders services. Nothing contained herein shall interfere with the hospital-patient relationship between Hospital and any patient, including the Patients under this Agreement, or with Hospital's legal or ethical obligation to provide the proper standard of care to Patients.

6.2 **Confidential Information.** Except as required by law, Hospital agrees not to disclose or in any way use, or allow any other person to disclose or use, confidential information of or concerning Corizon Health or the various facilities either during or after the term of this Agreement without Corizon Health's prior express written consent. Confidential information

10

includes, but is not limited to, legal or claim data, financial data, methods of operation, policies and procedures. Hospital shall not copy or remove Corizon Health documents for its own use or for the use of others, nor shall Hospital make use of or allow or assist any other person or company to make use of any Corizon Health procedure or program, including but not limited to those relating to utilization review or quality improvement, except as authorized under this Agreement. Hospital shall not disclose, or allow others to disclose, the terms of this Agreement, except, as it is necessary to perform this Agreement or to obtain accounting, legal or tax advice from its professional advisors. This Section shall survive termination of this Agreement.

Corizon Health agrees not to disclose or in any way use, or allow any other person to disclose or use, confidential information of or concerning Hospital or the various facilities either during or after the term of this Agreement without Hospital's prior express written consent. Confidential information includes, but is not limited to, legal or claim data, financial data, methods of operation, data related to quality or cost, policies and procedures. Corizon Health shall not copy or remove Hospital documents for its own use or for the use of others, nor shall Corizon Health make use of or allow or assist any other person or company to make use of any Hospital procedure or program, including but not limited to those relating to quality improvement, except as authorized under this Agreement. Corizon Health shall not disclose, or allow others to disclose, the terms of this Agreement, except, as it is necessary to perform this Agreement or to obtain accounting, legal or tax advice from its professional advisors. This Section shall survive termination of this Agreement.

Capital Region agrees to abide by these provisions for its employees.

**6.3    Exclusivity**. Excluding nephrology and dialysis services; and to the extent that (i) access to Capital Region is available, (ii) the necessary medical expertise has admitting privileges at the the relevant facility, and (iii) the required equipment and other relevant technologies are available at the relevant facility; the Capital Region will be the exclusive provider of non-emergent Health Care Services in the Restricted Area for Missouri Department of Correction inmates and detainees managed by Corizon Health. Corizon Health shall not, after the effective date of this Agreement, without the prior consent of Hospital, knowingly enter into, directly or indirectly, an agreement with any hospital whose business is located in the applicable Restricted Area to provide Health Care Services to Patients until the earlier of: i) the date on which either Corizon Health or Hospital gives notice of its intention to terminate or not renew this Agreement; ii) the date on which Hospital fails to fulfill its obligations under this Agreement.

6.3.1 It is the understanding of both parties that the discounted rates in Attachment 1A Compensation Schedule for Capital Region Medical Center and Capital Region Physicians are based on the anticipated volume relative to Capital Region Medical Center's and Capital Region Physicians' exclusivity in the Restricted Area.

6.3.2 Section 6.3 Exclusivity may be terminated by either party by providing the other party 180 days prior written notice.

11

6.3.3 If either party terminates the exclusivity described in Section 6.3 per Section 6.3.2, above, the reimbursement set forth in Attachment 1A will no longer apply as of the effective date of termination and the reimbursement in Attachment 1B will take effect.

6.3.4 If at any time during the term of this Agreement, Corizon Health fails to abide by the terms of Section 6.3, the reimbursement in Attachment 1B will apply to services provided by Capital Region Medical Center and Capital Region Physicians.

Corizon Health may maintain and amend existing agreements with other hospitals in the Restricted Area in order to provide adequate access to care in the event of emergent cases, scheduling conflicts with the Hospital and coverage for specialist services are not accommodated by the Hospital.

6.4 **Medical Records**. Hospital agrees to prepare comprehensive medical records for each Patient to whom Hospital provides Health Care Services. Each such medical record shall contain sufficient information to identify the Patient, establish a diagnosis and medical classification, support the diagnosis, identify and justify the treatment, and document the results of such treatment. Medical records prepared by Hospital during the term of this Agreement will be kept confidential by Hospital and shall be maintained in accordance with applicable state and federal laws governing confidentiality. To the extent allowed by law and subject to Hospital's policies and procedures and upon reasonable advance notice during normal business hours, Hospital will allow Corizon Health and its health care professionals access to such medical records specifically related to the Patient's medical and billing information which may be reasonably required for Corizon Health to carry out its responsibilities under the Agreement. Medical records will be provided without cost to Corizon Health unless additional copies of the record are requested and then Corizon Health will pay $0.12 per page. This Section shall survive termination of this Agreement.

## SECTION 7
### Construction of Agreement

7.1 **Assignment**. The Parties to this Agreement may not assign, sell or transfer any of their rights or responsibilities under this Agreement without the prior written consent of the other party.

7.2 **Amendments**. This Agreement may be amended only by written agreement signed by the Parties hereto.

7.3 **Section Headings**. The headings of sections in this Agreement are for reference only and shall not affect the meaning of this Agreement.

7.4 **Entire Agreement**. This Agreement, inclusive of any and all amendments, attachments and exhibits incorporated herein by reference, constitutes the entire understanding and agreement between the parties with regard to the subject matter hereof. No other prior or contemporaneous promise, obligation, statement or understanding between the parties, whether written or oral, shall be valid or binding.

12

7.5   **Binding Effect**.  This Agreement shall be binding upon and inure to the benefit of each party hereto, and their successors and permitted assigns. No party may assign this Agreement, except as specifically provided otherwise herein.

7.6   **No Third Party Beneficiary Rights**.  No patient, nor the Client, nor any other third party shall have any third party beneficiary rights hereunder.

7.7   **Non-Waiver.** Failure to insist upon strict compliance with any of the terms or conditions of this Agreement shall not be deemed to be a waiver in the event of any future breach of any term or condition hereunder.

7.8   **Severability**.  Should any provision (or part thereof) of this Agreement be held to be invalid and/or unenforceable, the remaining provisions shall remain in full force and effect.

7.9   **Notices**.  Any notice required hereunder (including notice of an amendment of this Agreement) shall be sent by registered or certified mail (return receipt requested), personal delivery, overnight commercial carrier, or other guaranteed delivery.  The notice shall be effective as of the date of delivery if the notice is personally delivered, or the date of receipt or refusal to accept delivery if the notice is forwarded by other means.  Unless otherwise specified, notices shall be sent to:

> **Corizon Health**
> Corizon Health
> 103 Powell Court, Suite 104
> Brentwood, TN 37027
> Attn:  Carla Copeland, Supervisor, Network Development
>
> With a courtesy copy to the Attn: General Counsel
>
> **Hospital**
> University of Missouri Health Care
> 1 Hospital Dr.
> Columbia, MO 65212
> Attn: Vince Cooper, Director Managed Care and Payer Strategy

7.10   **Non-Discrimination**.  Hospital shall not discriminate on the basis of race, color, sex, religion, national origin, ethnic group, age or disability.

7.11   **Multiple Counterparts.**  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which taken together shall constitute a single instrument.

7.12   **Name, Symbol and Service Mark**.  During the term of this Agreement, Corizon Health shall have the right to use Provider's name solely to make public reference to Hospital as a contracted provider for Client.  Hospital and Corizon Health shall not otherwise use each other's name, symbol or service mark without prior written approval.

13

7.13  **Applicable Law.** For conflict of law purposes, the laws of the State of Missouri shall apply in interpreting the terms of this Agreement.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

**IN WITNESS WHEREOF,** the parties have executed this Agreement effective as of that Effective Date first above written.

**CORIZON, LLC**

By: Scot M. Ward

_(signature)_
EVP & Chief Administrative Officer

Date: 11/22/2016

The Curators of the Univ. of Missouri
on behalf of
**UNIVERSITY OF MISSOURI HEALTH**

By:

_(signature)_ J. Vince Cooper
Signature

Director, Payer Strategy + Health System Contracting
Title

Print Name: J. Vince Cooper

Date: 12-1-16

TIN: 43-6003859, 90-0294051, 44-0546366

NPI: multiple

APPROVED
AS TO
LEGAL FORM
KSB 12/1/16

14

**CONTRACT NOT VALID WITHOUT SIGNATURES**
Hospital Services Agreement
Revised: 12/8/08; 8/09; 3/10; 5/10; 6/10, 8/10, 06/11, 8/12, 10/12

Electronically Filed - Boone - May 11, 2022 - 02:02 PM

Electronically Filed - Boone - May 11, 2022 - 02:02 PM

# ATTACHMENT I
## COMPENSATION SCHEDULE
### FOR
## UNIVERSITY OF MISSOURI HEALTH CARE
## TAX ID 43-6003859
## UNIVERSITY HOPSITALS AND CLINICS, ELLIS FISHEL CANCER CENTER
## MISSOURI ORTHOPAEDIC INSTITUTE, MISSOURI PSYCHIATRIC CENTER

Effective | 11/1/2016 |

## SECTION 1
### Definitions

**1.1    Customary Charge:** The usual and customary fees charged by Hospital for the particular service that is performed, which do not exceed the fees Hospital would charge any other person regardless of whether the person is a Patient.

**1.2    Eligible Charges:** The amount of a Hospital's Customary Charges from which any reduction is taken for purposes of payment. Eligible Charges do not include amounts that are billed but that are duplicative, incorrectly coded, improperly coded, or that have similar defects, errors, irregularities or mistakes in billing. Eligible Charges also do not include charges for procedures, services or inpatient days that are not Medically Necessary or were unauthorized under this Agreement.

**1.3    Payment.** For Health Care Services rendered to a Patient and covered by this Agreement, Hospital shall be paid by Corizon Health the amounts set forth in this Attachment I.

## SECTION 2
### Payment for Inpatient Health Care Services

Hospital will be reimbursed for inpatient services at 134% of the diagnostic related grouping (DRG) rate. Reimbursement will be based upon CMS IPPS MS DRG Version in effect on the date of discharge.

Catastrophic. If Eligible Charges for a single inpatient admission exceed $50,000, all Eligible Charges will be reimbursed at 58% of Eligible Charges.

Reimbursement will be in accordance with current CMS' Methodology for calculating MS-DRG payments.
The MS-DRG payment shall include all components within the CMS PC Pricer, without limitation,

      (a)      The base rate and outlier payment as calculated by CMS, to the extent that such payments continue to be utilized by CMS.

      (b)      Special reimbursement guidelines issued by CMS with respect to expanded coverage regarding certain services

Case 2:22-cv-04100-NKL   Document 1-1   Filed 06/27/22   Page 31 of 50

(c)    Add on payments including: Capital and Operating DSH, Capital and Operating IME, Medicare Dependent, and any other factors paid by CMS to Hospital

The MS-DRG payment shall not include any Sequestration reductions (note Sequestration reductions are not calculated within the PC Pricer).

## SECTION 3
## Payment for Outpatient Health Care Services

Hospital will be reimbursed for all outpatient services at 45% of Eligible Charges

Implantables shall be reimbursed at one hundred five percent of (105%) of provider's cost. Invoice for implantables must be submitted with claim.

**Hospital Rate Neutralization.** Beginning January 1, 2016, and each calendar year thereafter, Hospital shall give written notice to Corizon Health of its increase in charges. Said notice shall include a calculation of the aggregate percentage increase in Hospital's billed charges. For inpatient and outpatient health services that are reimbursed as a percentage of Eligible Charges, if Hospital's charges are in excess of five percent (5%) for services paid under this Agreement, then effective the first of the month following the Hospital's increase in charges, reimbursement rates based on Eligible Charges shall be decreased by the percentage points over the five percent (5%) ceiling. Hospital shall notify Corizon Health of all increases within thirty (30) business days.

**Recurring Outpatient Health Services.** When a Patient is scheduled for recurring outpatient encounters (e.g., speech therapy, radiation therapy or chemotherapy) and these visits are combined on a single UB-04 claim form, Hospital must report the date of service associated with each encounter and/or attach an itemized statement. Recurring or series Outpatient Health Care Services should not be combined on the same claim with an Emergency Room visit, an Outpatient Surgery Procedure or an Observation stay if the Hospital expects separate payment for each of the recurring outpatient diagnostic or therapeutic services rendered on separate dates of service.

## SECTION 4
## Payment for Professional Physician Services
## UNIVERSITY PHYSICIANS
## TAX ID 90-0294051

**Payment:** For Health Care Services rendered to a Patient and covered by this Compensation Schedule, Provider shall be paid by Corizon at the rates below. Payment shall not be limited to the Provider billed charges.

**Fee Schedule**

175% of current year Medicare Area 99 Rest of Missouri  Site of Service Adjusted

**Anesthesia**
276% of current year Medicare Area 99 Rest of Missouri.

Qualifying Circumstance CPT Units:

| | |
|---|---|
| 99100 | 1 unit |
| 99116 | 5 units |
| 99135 | 5 units |
| 99140 | 2 units |

Risk Modifier Units:

| | |
|---|---|
| P1 | 0 units |
| P2 | 0 units |
| P3 | 1 unit |
| P4 | 2 units |
| P5 | 3 units |
| P6 | 4 units |

**Unlisted/No Medicare Rate**
85% of billed charges

**Annual Increase**
Rates shall increase 1% (one percent) annually on the anniversary date of this agreement for all services –except for Injectibles/Vaccines .

18

# ATTACHMENT 1A

## VOLUME BASED COMPENSATION SCHEDULE
## FOR
## CAPITAL REGION MEDICAL CENTER AND CAPITAL REGION PHYSICIANS
## TAX ID 44-0546366
## WITH EXCLUSIVITY (PER SECTION 6.3)

### SECTION 1

**1.1    Customary Charge:** The usual and customary fees charged by Hospital for the particular service that is performed, which do not exceed the fees Hospital would charge any other person regardless of whether the person is a Patient.

**1.2    Eligible Charges:** The amount of a Hospital's Customary Charges from which any reduction is taken for purposes of payment. Eligible Charges do not include amounts that are billed but that are duplicative, incorrectly coded, improperly coded, or that have similar defects, errors, irregularities or mistakes in billing. Eligible Charges also do not include charges for procedures, services or inpatient days that are not Medically Necessary or were unauthorized under this Agreement.

**1.3    Payment.** For Health Care Services rendered to a Patient and covered by this Agreement, Hospital shall be paid by Corizon Health the amounts set forth in this Attachment 1A.

### SECTION 2
### Payment for Inpatient Health Care Services

Hospital will be reimbursed for inpatient services at 100% of the current CMS MS diagnostic related grouping (DRG) rate.

Drugs with Revenue Codes 0343, 0344, and 0636 shall be reimbursed, in addition to the DRG rate, at a percent of Charges based on Capital Region Medical Center's cost to charge ratio as reported to CMS through the Medicare Cost Report, if the Eligible Charges for the defined Revenue Codes exceed $5,000. The parties agree to review the rate annually each December and adjust the rate to reflect the then current CRMC Medicare Cost to Charge Ratio. Rates will be adjusted upward or downward accordingly and will be effective January 1st.

Payment will be in accordance with current CMS' Methodology for calculating MS-DRG payments

The MS-DRG payment shall include all components within the CMS PC Pricer except Capital IME, Operating IME, and Medicare Dependent,
  (a)    Wage index will be based on Jefferson City MSA
  (b)    The base rate and outlier payment as calculated by CMS, to the extent that such payments continue to be utilized by CMS.

19

(c)    Special reimbursement guidelines issued by CMS with respect to expanded coverage regarding certain services

(d)    Add on payments including Capital and Operating DSH and any other factors paid by CMS to Capital Region Medical Center but excluding Capital IME, Operating IME, and Medicare Dependent.

The MS-DRG payment shall include any Sequestration reductions implemented by Corizon, but only to the extent that the mandated reduction reduces the CMS fee schedule.

## SECTION 3
## Payment for Outpatient Health Care Services

Hospital will be reimbursed for all outpatient services at 100% of the current CMS ambulatory payment classification (APC) rate.

Implantables (Revenue Codes 0274-0278) shall be reimbursed, in addition to APC rates, at one hundred five percent of (105%) of provider's cost. Invoice for implantables must be submitted with claim.

Drugs with Revenue Codes 0343, 0344, and 0636 shall be reimbursed, in addition to the APC rate, at a percent of Charges based on Capital Region Medical Center's cost to charge ratio as reported to CMS through the Medicare Cost Report, if the Eligible Charges for the defined Revenue Codes exceed $5,000. The parties agree to review the rate annually each December and adjust the rate to reflect the then current CRMC Medicare Cost to Charge Ratio. Rates will be adjusted upward or downward accordingly and will be effective January 1st.

Payment will be in accordance with current CMS' Methodology for calculating the hospital Outpatient Prospective payment. Hospital shall bill in the format that CMS requires for reimbursement. All coding and billing guidelines issues by CMS will be followed in administering APC payment.

The APC payment shall include, without limitation,

(a)    The base rate and outlier payment as calculated by CMS, to the extent that such payments continue to be utilized by CMS.

(b)    Special reimbursement guidelines issued by CMS with respect to expanded coverage regarding certain services

(c)    Wage Index will be based on Jefferson City MSA

**Recurring Outpatient Health Services.** When a Patient is scheduled for recurring outpatient encounters (e.g., speech therapy, radiation therapy or chemotherapy) and these visits are combined on a single UB-04 claim form, Hospital must report the date of service associated with each encounter and/or attach an itemized statement. Recurring or series Outpatient Health Care Services should not be combined on the same claim with an Emergency Room visit, an Outpatient Surgery Procedure or an Observation stay if the Hospital expects separate payment for

20

each of the recurring outpatient diagnostic or therapeutic services rendered on separate dates of service.

## SECTION 3
## Payment for Professional Health Care Services

Professional physician services provided by Capital Region Physicians (Tax ID 44-0546366) shall be reimbursed at one hundred and thirty percent (130%) of the current Medicare Area 99 Rest of Missouri fee schedule.  .

**Unlisted/No RVU**
50% of billed charges

**ATTACHMENT 1B**

**NON-EXCLUSIVE COMPENSATION SCHEDULE**
**FOR**
**CAPITAL REGION MEDICAL CENTER AND CAPITAL REGION PHYSICIANS**
**TAX ID 44-0546366**
**WITHOUT EXCLUSIVITY (PER SECTION 6.3)**

**1.1     Customary Charge:** The usual and customary fees charged by Hospital for the particular service that is performed, which do not exceed the fees Hospital would charge any other person regardless of whether the person is a Patient.

**1.2     Eligible Charges:** The amount of a Hospital's Customary Charges from which any reduction is taken for purposes of payment. Eligible Charges do not include amounts that are billed but that are duplicative, incorrectly coded, improperly coded, or that have similar defects, errors, irregularities or mistakes in billing. Eligible Charges also do not include charges for procedures, services or inpatient days that are not Medically Necessary or were unauthorized under this Agreement.

**1.3     Payment.** For Health Care Services rendered to a Patient and covered by this Agreement, Hospital shall be paid by Corizon Health the amounts set forth in this Attachment I.

**SECTION 2**
**Payment for Inpatient Health Care Services**

Hospital will be reimbursed for inpatient services at 134% of the diagnostic related grouping (DRG) rate. Reimbursement will be based upon CMS IPPS MS DRG Version in effect on the date of discharge.

Catastrophic. Inpatient Care that exceeds **$50,000** in Eligible Charges will be reimbursed at 58% of Eligible Charges.

Reimbursement will be in accordance with current CMS' Methodology for calculating MS-DRG payments.
The MS-DRG payment shall include all components within the CMS PC Pricer, without limitation,
      (a)      The base rate and outlier payment as calculated by CMS, to the extent that such payments continue to be utilized by CMS.
      (b)      Special reimbursement guidelines issued by CMS with respect to expanded coverage regarding certain services
      (c)      Add on payments including: Capital and Operating DSH, Capital and Operating IME, Medicare Dependent, and any other factors paid by CMS to Hospital

The MS-DRG payment shall not include any Sequestration reductions (note Sequestration reductions are not calculated within the PC Pricer).

# SECTION 3
## Payment for Outpatient Health Care Services

Hospital will be reimbursed for all outpatient services at 45% of Eligible Charges

Implantables shall be reimbursed at one hundred five percent of (105%) of provider's cost. Invoice for implantables must be submitted with claim.

**Hospital Rate Neutralization.** Beginning January 1, 2016, and each calendar year thereafter, Hospital shall give written notice to Corizon Health of its increase in charges. Said notice shall include a calculation of the aggregate percentage increase in Hospital's billed charges. For inpatient and outpatient health services that are reimbursed as a percentage of Eligible Charges, if Hospital's charges are in excess of five percent (5%) for services paid under this Agreement, then effective the first of the month following the Hospital's increase in charges, reimbursement rates based on Eligible Charges shall be decreased by the percentage points over the five percent (5%) ceiling. Hospital shall notify Corizon Health of all increases within thirty (30) business days.

**Recurring Outpatient Health Services.** When a Patient is scheduled for recurring outpatient encounters (e.g., speech therapy, radiation therapy or chemotherapy) and these visits are combined on a single UB-04 claim form, Hospital must report the date of service associated with each encounter and/or attach an itemized statement. Recurring or series Outpatient Health Care Services should not be combined on the same claim with an Emergency Room visit, an Outpatient Surgery Procedure or an Observation stay if the Hospital expects separate payment for each of the recurring outpatient diagnostic or therapeutic services rendered on separate dates of service.

# SECTION 4
## Payment for Professional Physician Services
## CAPITAL REGION PHYSICIANS
## TAX ID 44-0546366

**Payment:** For Health Care Services rendered to a Patient and covered by this Compensation Schedule, Provider shall be paid by Corizon at the rates below. Payment shall not be limited to the Provider billed charges.

**Fee Schedule**
175% of current year Medicare Area 99 Rest of Missouri Site of Service Adjusted

**Anesthesia**
276% of current year Medicare Area 99 Rest of Missouri.

23

Qualifying Circumstance CPT Units:

| | |
|---|---|
| 99100 | 1 unit |
| 99116 | 5 units |
| 99135 | 5 units |
| 99140 | 2 units |

Risk Modifier Units:

| | |
|---|---|
| P1 | 0 units |
| P2 | 0 units |
| P3 | 1 unit |
| P4 | 2 units |
| P5 | 3 units |
| P6 | 4 units |

**Unlisted/No Medicare Rate**
85% of billed charges

**Annual Increase**
Rates shall increase 1% (one percent) annually on the anniversary date of this agreement for all services – except for Injectibles/Vaccines .

**UTILIZATION REVIEW**

## SECTION I.  GENERAL INFORMATION

Corizon Health's Utilization Review Program (hereinafter "Corizon Health UR") utilizes nationally accepted clinical guidelines to determine justification of admission and necessity of services. Continued stay is based upon severity of illness, necessity of service and level of care provided by the Missouri Department of Corrections (hereinafter referred to as "Hospital").

The Hospital Utilization Review Department (hereinafter referred to as "Hospital UR") is requested to assist Corizon Health UR in obtaining current clinical information on all hospitalized patients who are in the custody of the Facility.

Corizon Health UR may request the medical record in accordance with section 6.4 (selected portions or its entirety) upon discharge of the patient from the Hospital to perform retrospective review or quality assurance reviews as needed. Such requests shall be in writing to the Medical Records Department per section 6.4. Separate written consent of the patient is not necessary when Corizon Health is the primary payor of the claim.

All patient information received by the hospital, and likewise by Corizon Health, will remain privileged and confidential. Information will not be disclosed to unauthorized parties.

## SECTION II.  ADMISSION AND CONTINUED STAY REVIEWS

Corizon Health UR requests notification of all admissions by the Admissions Office during normal working hours. Notification of emergency admissions may take place no later than the next working day. If Corizon Health UR initially learns of an admission through its staff, it will contact the Hospital Admissions Office for verification. All elective/planned admissions will be given an authorization number by Corizon Health UR for billing purposes; emergency admissions will not be given an authorization number. Verification of authorization numbers may be obtained from Corizon Health UR during normal working hours (Monday through Friday 8:30 a.m. - 6:00 p.m.) by calling (800) 729-0069. During non-business hours admissions may be reported by Fax to (615) 376-1165.

Corizon shall not deny payment for a claim for inpatient Medically Necessary Health Care Services resulting from an emergency admission solely on the basis that Hospital did not provide timely notification of admission. Notification alone does not guarantee coverage or confirm eligibility. Determination by Corizon Health UR that false, misleading, or incomplete information was provided at the time of initial authorization of service, may result in a denial of payment.

Corizon Health UR will contact the Hospital UR to request review during the Hospital UR Office's normal working hours. Reviews are upon admission to the facility, with continued stay reviews daily. Periods between reviews may be more or less frequent if the patient's condition indicates such and both the Corizon Health UR Representative and the Hospital's UR

25

Representative are in agreement. Authorization for continued stay will be given to the Hospital's UR Representative by the Corizon Health UR Representative for the period of time for which the service was provided and reported. Authorization for continued stay is not given in advance unless the patient's condition warrants less frequent reviews. If clinical information provided does not meet the criteria for continued Hospital stay Hospital UR will be notified by Corizon Health UR of the potential for denial of payment. An opportunity for the attending physician or Hospital UR to provide further information is then given. A Corizon Health physician advisor is available Monday - Friday for discussion of the case.

## SECTION III. DENIALS AND RECONSIDERATION

The Corizon Health Utilization Review Department will notify the Hospital UR Department when the decision to issue a denial of payment for services has been made. Such notification shall be by telephone followed by written letter indicating the reason(s) for denial. Payment denials may be issued for delay of discharge, delay of service, care rendered not associated with primary diagnosis, complications of surgery or treatment that are not normally expected and in other proper circumstances.

The Hospital may request reconsideration for denied payment for services. Written request for reconsideration must be made within ninety (90) days of the dated letter of payment denial and should include supportive documents for reconsideration such as Physician Progress Notes, Lab and X-ray Results, Nursing Notes, Medication Records, etc. Reconsideration requests should be forwarded to the following address:

> UM Systems Coordinator
> Corizon Health
> 103 Powell Court, Suite 104
> Brentwood, TN 37027

Final determination by the Medical Review committee of Corizon Health will be issued in writing to the Hospital within forty-five (45) days of request for reconsideration.

## SECTION IV. COVERAGE ISSUES

Corizon Health will pay for primary and related diagnosis only. All non-emergent care not related to the primary diagnosis must be prior approved for payment by the Corizon Health UR Department Representative.

Corizon Health does not provide payment for services which can be provided by the Jail/Prison Health Care Infirmary.

Corizon Health does not provide payment for services for the following:

* Sterilizations/Tubal Ligations
* Non-authorized Elective Surgical Procedures
* Cosmetic Surgery
* Infertility Studies

26

* Organ Transplants
* Care of Newborn (unless by specific contract)
* Psychiatric Admissions (unless by specific contract)
* Psychiatric Holds (extended stay due to psychiatric illnesses following general medical/surgical or emergent care. Psychiatric care will be provided at the Jail/Prison.)
* Pass or Court Days (patient temporarily released from hospital care to attend court, etc.)

## SECTION V. EXPIRATION OF SENTENCE

The Corizon Health UR Department will notify the Hospital by telephone followed by written confirmation of all inmates released from the custody of Facility. Corizon Health is not responsible for payment of medical care provided after the time of release from custody.

## SECTION VI. OUTPATIENT SERVICES

Corizon Health provides precertification of all non-emergent outpatient services. Services, which are provided without pre-authorization, shall be clinically audited for necessity and justification prior to payment. Corizon Health UR Department will work with the outpatient clinic areas to provide verification of authorized services during normal working hours.

## SECTION VII. QUALITY ASSURANCE

Hospital shall ensure the application of a quality assurance process that utilizes appropriate quality of care standards. Hospital will also ensure that appropriate quality assurance review activity, including subsequent action taken by the Hospital, will occur for quality of care issues referred by Corizon Health. Hospital shall make available for review and examination by Corizon Health's Medical Director or his or her designee, upon request, documentation regarding the Hospital's quality assurance activities as they may reasonably relate to Health Care Services rendered to Patients hereunder except to the extent such documents are protected from disclosure under peer review privilege or other legal privilege.

Medical records will be requested upon discharge for the Corizon Health Medical Review Committee to review when Corizon Health feels that review is warranted.

The request for medical records will be in writing and directed to the Director of Medical Records and the designated Hospital Representative. QA Studies of records will be prepared and forwarded to the Hospital Representative when Corizon Health feels that such is warranted.

## ATTACHMENT III

## RESTRICTED AREA

Missouri Department of Corrections North Central Region which includes to following counties:

| | |
|---|---|
| Adair | Maries |
| Audrain | Marion |
| Audrain | Miller |
| Benton | Moniteau |
| Boone | Monroe |
| Callaway | Montgomery |
| Camden | Morgan |
| Clark | Pettis |
| Cole | Phelps |
| Cooper | Pike |
| Crawford | Pulaski |
| Dent | Ralls |
| Hickory | Randolph |
| Howard | Schuyler |
| Knox | Sctland |
| Lewis | Shelby |
| Lincoln | Warren |
| Macon | |

Additional Counties:
Dallas
Gasconade
Laclede
Polk
Texas
Washington
Webster
Wright

Dear Provider:

The following services are available at the jail/prison infirmary unit once the patient is stable. Discharge planning can be arranged by contacting Corizon Health Case Management Department.

Chief Medical Officer

| INTRAVENOUS THERAPY | Tube Care | Respiratory Therapy |
|---|---|---|
| [] Continuous IV therapy for hydration<br>[] Antibiotic administration<br>[] Hyperalimentation<br>[] Chemotherapy | [] Foley Catheter<br>[] Nephrostomy Tube<br>[] Ureteral Stints<br>[] Gastrostomy tubes<br>[] NG tubes<br>[] Penrose Drains<br>[] JP Drains<br>[] T-Tube drains | [] IPPB Treatments<br>[] Medicated Aerosol Treatments<br>[] Pentamidine Treatments<br>[] Oxygen Administration<br>[] Tracheostomy Care |
| IV Access Lines after Placement<br><br>[] Peripheral lines<br>[] Central Line Catheters<br>[] P.I.C. Lines<br>[] Renal Dialysis Access Lines<br>[] Porta Caths<br>[] Broviac Hickman Caths | Wound Care<br><br>[] Dressing changes<br>[] Medicated Dressings<br>[] Observation<br>[] Moist Dressings<br>[] Sterile Dressings | Pre & Post Hospital Care<br><br>[] Pre-operative education<br>[] Pre-operative preparation<br>[] Pre-operative testing<br>[] Post-operative monitoring<br>[] Progressive ambulation<br>[] Restorative nursing care |
| Orthopedic Monitoring<br><br>[] Cast care<br>[] Pelvic traction<br>[] External traction<br>[] Circulation Monitoring<br><br>OTHER SERVICES<br><br>[]_____<br>[]_____<br>[]_____ | General Nursing Care<br><br>[] Vital Sign Monitoring<br>[] Turning & Positioning<br>[] Medication Administration<br>[] Assist with Bathing & Toileting<br>[] Acuchecks<br>[] Urine testing<br>[] Specimen Collection<br>[] EKG<br>[] Universal Isolation | Chronic Care Management<br><br>[] Diabetic Monitoring<br>[] Asthma Monitoring<br>[] Cardiac Monitoring<br>[] Seizure Monitoring<br>[] TB Isolation |

**     Some monitoring abilities depend upon the availability of daily lab results to adjust medications etc.

3

DocuSign Envelope ID: D3092698-CF5A-4CF4-AF95-E2617A846F8F

ATTACHMENT IV

This Attachment shall constitute authorization for The Curators of the University of Missouri to sign the purchasing/ revenue agreement on behalf of CRMC, and CRMC agrees to be bound by the terms and conditions of the agreement. This Exhibit shall remain in full force and effect for so long as CRMC remains an affiliate of the University and UMCMA; provided, however, that CRMC may terminate its participation in this agreement by providing the University with ninety (90) days prior written notice of its intent to terminate.

CRMC and the University agree that no employee, officer or agent, individually or collectively, of CRMC or the University, incurs or assumes any individual or personal liability by the execution of this Exhibit, and any such liability is hereby released by CRMC and the University respectively as a condition of and in consideration for the execution of this Exhibit.

To the extent permitted by Missouri law and without waiving sovereign immunity, each party hereto shall be responsible for any and all damages, claims, liabilities or judgments which may arise as a result of the actions or inactions of that party's employees hereunder, and there shall be no obligation of indemnification between the parties.

Contracted Company Name: _Corizon Health LLC._

Contract Description:

_To Provide health care services to the inmates and detainees of the Missouri Department of Corrections managed by Corizon_

Effective Date: _11/1/2016_

Term: _1 year initial term; auto renewal_

THE CURATORS OF THE UNIVERSITY OF MISSOURI, a Public Corporation of the State of Missouri

By: _T. Vince Cooper_  Date _12-1-16_

T. Vince Cooper, Director of Payer Strategy and Health System Contracting
Printed Name                    Title

**APPROVED AS TO LEGAL FORM**
_KSB_

CAPITAL REGION MEDICAL CENTER

By: _Gaspare Calvaruso_  Date _11-23-16_

_GASPARE CALVARUSO, PRESIDENT_
Printed Name                    Title

# FIRST AMENDMENT TO HOSPITAL SERVICES AGREEMENT

## Between

## CORIZON, LLC

## And

## UNIVERSITY OF MISSOURI HEALTH

**THIS FIRST AMENDMENT** ("Amendment") is made to the Hospital Services Agreement ("Agreement") effective the 1st day of November 2016 between Corizon, LLC a Limited Liability Company with principal offices located at 103 Powell Court, Suite 104, Brentwood, TN 37027, acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "Corizon Health") and The Curators of the University of Missouri, on behalf of University of Missouri Health and its affiliates, a Missouri based Hospital (hereinafter referred to as "Hospital"), with principal offices located at One Hospital Dr., Columbia, MO 65201. The amendment will be effective on the date executed by both parties.

## RECITALS

**WHEREAS,** Corizon Health and Hospital have entered into an Agreement dated November 1, 2016 whereby the Hospital agrees to provide health care services to inmates of the Missouri Department of Corrections; and

**WHEREAS,** Corizon Health and Hospital agree to amend the Hospital Services Agreement.

**WHEREAS,** Corizon Health and Hospital agree that this Amendment will apply to relevant claims for services provided November 1, 2016 and forward.

**NOW THEREFORE,** in consideration of the mutual covenants and agreements contained herein, the parties agree to amend the Agreement as follows:

1. The following provision shall be added to **Attachment IA, Section 3, Payment for Outpatient Health Care Services:**

   "Charges billed with surgical HCPCS code 41899 shall be reimbursed at an all-inclusive flat rate of four thousand dollars ($4,000.00) per visit. If charges exceed twenty thousand dollars ($20,000.00), then charges shall be reimbursed at thirty percent (30%) of billed."

2. Except as to the terms and conditions updated by this Amendment, all of the terms and conditions of the Agreement are declared by the parties to be in full force and effect

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Amendment as of the day and year first above written.

**WITNESS**

**CORIZON, LLC**

Roland Maldonado

_Roll Maldonado_
Senior Vice President, State Corrections

_6/8/17_
Date

Scot Ward

_[signature]_
Chief Administrative Officer

_6/12/17_
Date

THE CURATORS OF THE UNIVERITY OF MISSOURI ON BEHALF OF UNIVERSITY OF MISSOURI HEALTH

_J. Vince Cooper_
Signature

_J. Vince Cooper_
Print Name and Date

_43-6003859_
Tax ID #

_1699769901_
NPI #

_One Hospital Dr. AC057.10_
Address

_Columbia, MO 65212_
City, State, Zip Code

_573-882-1608_
Telephone Number



Electronically Filed - Boone - May 11, 2022 - 02:02 PM

## SECOND AMENDMENT TO HOSPITAL SERVICES AGREEMENT

### Between

### CORIZON, LLC

### And

### UNIVERSITY OF MISSOURI HEALTH

**THIS SECOND AMENDMENT** (this "Amendment") is made and entered into this 4th day of August, 2020, by and between Corizon, LLC, a Missouri Limited Liability Company with principal offices located at 103 Powell Court, Brentwood, TN, 37027, acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "Corizon Health") and The Curators of the University of Missouri, on behalf of University of Missouri Health and its affiliates, a Missouri based Hospital (hereinafter referred to as "Hospital"), with principal offices located at One Hospital Drive, Columbia, MO 65201 (hereinafter collectively referred to as the "Parties").

### RECITALS

**WHEREAS**, Corizon Health and Hospital have entered into an Agreement dated November 1, 2016, whereby the Hospital agrees to provide health care services to inmates and detainees under the control of the Missouri Department of Corrections ("Client"); and

**NOW THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

1. Section 3.3.2. of the Agreement shall be replaced in its entirety with the following language:

   "Hospital will submit Completed Claims to Corizon Health on the approved hospital billing form within one hundred & twenty (120) days of date of service rendered to the Patient or Corizon Health will have no obligation to pay. For patients with a denied Medicaid application, Hospital shall have ninety (90) days from the date of application denial to file the claim. This will supersede the original 120 days, when applicable."

2. A newly added section, Section 3.3.5 shall state the following:

   "Corizon Health shall supply a monthly list of patients that will apply or have applied for Medicaid eligibility."

3. A newly added section, Section 6.5 shall state the following:

   If this Contract involves the acquisition or disposal of services, supplies, information technology, or construction and has a total potential value of $100,000 or more, and if Contractor is a company with ten (10) or more employees, then Contractor certifies that it, and any company affiliated with it, does not boycott Israel and will not boycott Israel

1

Electronically Filed - Boone - May 11, 2022 - 02:02 PM

during the term of this Contract. In this paragraph, the terms "company" and "boycott Israel" shall have the meanings described in Section 34.600 of the Missouri Revised Statutes.

4. Except as to the terms and conditions updated by this Amendment, all terms and conditions of the Agreement are declared by the parties to be in full force and effect.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Amendment as of the day and year first above written.

**CORIZON, LLC**

Michael Murphy

_____
SVP, State Corrections

9/10/2020
_____
Date

F. Jeffrey Sholey

_____
Chief Financial Officer

9/10/2020
_____
Date

**THE CURATORS OF THE UNIVERSITY OF MISSOURI ON BEHALF OF UNIVERSITY OF MISSOURI HEALTH**

_____
Signature

T. Vince Cooper     10/1/2020 | 8:48 AM CDT
_____
Print Name and Date

436003859 & 900294051
_____
Tax ID #

One Hospital Dr, DC406.00
_____
Address

Columbia, MO 65212
_____

Approved as to
Legal Form

09/25/2020

2

DocuSign Envelope ID: 077B084D-C772-4A1D-8942-A8D890ED0891

Address

573-882-1008

Telephone Number

Electronically Filed - Boone - May 11, 2022 - 02:02 PM

3