# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

THE CURATORS OF THE UNIVERSITY OF
MISSOURI and CAPITAL REGION
MEDICAL CENTER,

      Plaintiffs,

      v.

CORIZON HEALTH, INC. and CORIZON,
LLC,

      Defendants.

Case No. 2:22-cv-4100-NKL

## ORDER

Plaintiffs, The Curators of the University of Missouri (the "University") and Capital Region Medical Center ("Capital Region"), seek to remand this case to the Circuit Court of Boone County. *See* Doc. 7. Plaintiffs bring exclusively Missouri state law claims, and accordingly argue that this Court lacks subject matter jurisdiction given the absence of complete diversity between the Parties. Defendants Corizon Health, Inc. and Corizon, LLC (together, "Corizon") oppose, and succinctly identify the issue in this case: does the presence of the University of Missouri—an arm of the State of Missouri—destroy this Court's diversity jurisdiction? Corizon suggests the answer is no. Settled law holds the opposite. Accordingly, this Court lacks subject matter jurisdiction, and this case is REMANDED to the Circuit Court of Boone County.

## I. BACKGROUND

Defendant Corizon provides healthcare services to corrections facilities throughout the United States. Corizon contracts with the Missouri Department of Corrections ("MDOC") to provide or arrange for the provision of healthcare services to inmates in MDOC's custody. Corizon, in turn, contracts with the University. Under that agreement (the "Agreement"), the

University and Capital Region provide both impatient and outpatient healthcare services in exchange for compensation from Corizon.

The University and Corizon are the only signatories to the Agreement; the University signed the Agreement on its own behalf and for its affiliates. Capital Region is one such affiliate. Under the Agreement, certain services are offered through Capital Region and others are offered by the University directly. *See* Doc. 1-1, at 16–18. After providing services, the University seeks reimbursement from Corizon, using a procedure established by the Agreement.

The University alleges that, to date, Corizon owes more than $12,000,000.00 under the Agreement. The University raised the outstanding payments with Corizon, and while Corizon originally agreed to pay all completed claims with interest, it still has not done so. Accordingly, the University and Capital Region filed suit in the Circuit Court of Boone County. The University affirmatively alleged that federal jurisdiction was improper, given the University was an arm of the State of Missouri. Nevertheless, Corizon removed, invoking this Court's diversity jurisdiction under 28 U.S.C. §1332(a)(1). The University seeks remand because the University's status as an arm of the state destroys this Court's diversity jurisdiction, and there exists no other source of federal jurisdiction.

## II.    STANDARD

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010). Corizon removed this case relying upon federal diversity jurisdiction, specifically 28 U.S.C. § 1332(a)(1). To have done so properly, Corizon must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000 and the case is "between citizens of different [s]tates." 28 U.S.C. §§ 1332(a) and 1441(a); *see also Knudsen v. Sys. Painters, Inc.*, 634 F.3d 968,

975 (8th Cir. 2011). Statutes conferring diversity jurisdiction are to be strictly construed, as are removal statutes. *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992); *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002). Accordingly, a "district court is required to resolve all doubts about federal jurisdiction in favor of remand." *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997) (citation omitted).

"There is no question that a State is not a 'citizen' for purposes of [diversity jurisdiction]." *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973). Nor is an entity that is merely an "alter ego" or "arm" of a State a citizen for purposes of § 1332(a)(1). *Id.* Accordingly, if a state, or arm of the state, is a party, the case is not removable on diversity grounds. *See* 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3723 (4th ed., Apr. 2022 update) ("Since it is well established that a state is not a 'citizen' of any state, it follows that when a state is a real party in interest, the case cannot be removed on the basis of diversity jurisdiction."); *Pub. Sch. Ret. Sys. of Missouri v. State St. Bank & Tr. Co.*, 640 F.3d 821, 833 (8th Cir. 2011) (finding claim brought by arm of state was not subject to removal pursuant to diversity statute because an arm of the state is not a "'citizen[]' for the purposes of § 1332(a)(1)[.]"); *Missouri State Employees' Ret. Sys. v. Credit Suisse, New York Branch*, No. 09-cv-4224-NKL, 2010 WL 318652, at *6 (W.D. Mo. Jan. 21, 2010) (remanding case brought by arm of state retirement plan because "suits [by an arm of the state] are not subject to removal to federal court on the basis of diversity jurisdiction.").[1]

---

[1] *See also Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) ("Thus, if one party to an action is not a citizen, and therefore not able to sue or be sued in federal court under § 1332, the district court does not have jurisdiction of the action under § 1332, even if all other parties to that action are citizens of different states."); *Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 366 (5th Cir. 2006) ("Ordinarily '[i]n an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction.'"); *Univ. of S. Alabama v. Am.*

## III.    DISCUSSION

The Parties do not dispute that the amount in controversy exceeds $75,000 in this case. Accordingly, whether this Court has subject matter jurisdiction turns on whether this lawsuit is between citizens of different states. Corizon argues that diversity exists unless: (1) the University is an arm of the state and, if so, (2) the University's presence in this case destroys diversity even if there is an additional, diverse plaintiff. To the first point, Corizon suggests that the University's role as an arm of the state is different in the context of this lawsuit, because the University is a plaintiff, rather than a defendant. And to the second, Corizon argues that complete diversity exists even if the University is an arm of the state because Capital Region and both Corizon Defendants are diverse, and "nothing in the statute creating diversity jurisdiction requires that every party be a citizen of a state." Doc. 18, at 2. Each argument is foreclosed by binding precedent.

### A. Whether the Curators of the University of Missouri Acts as an Arm of the State

#### a. Whether the Arm of the State Test is the Same Under the Diversity Statute and Eleventh Amendment Immunity

Corizon does not dispute that the University has, many times, been recognized as an arm of the State of Missouri. *See, e.g., Scherer v. Curators of Univ. of Missouri*, 49 F. App'x 658, 658–59 (8th Cir. 2002) (holding that the "University of Missouri is [a] state instrumentality" and finding the district court properly dismissed plaintiff's claims against the Curators based on Eleventh Amendment immunity); *Ormerod v. Curators of Univ. of Missouri*, 97 F. App'x 71, 72 (8th Cir. 2004) (affirming summary judgment for the University based on the Eleventh Amendment); *Hershey v. Curators of Univ. of Missouri*, No. 2:20-CV-04239-MDH, 2022 WL

_____

*Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999) ("Therefore, if a party is deemed to be 'an arm or alter ego of the State,' then diversity jurisdiction must fail.").

1105743, at *4 (W.D. Mo. Apr. 13, 2022) (holding that the University is an arm of the state and therefore entitled to immunity). However, Corizon counters that in each of these cases—and in each of those cited by the University—the University was the defendant seeking immunity. To Corizon, the University can be an arm of the state and entitled to immunity, but a "citizen of a state" for the purposes of the diversity statute. Corizon cites no case to support its position, and binding authority says otherwise.[2]

In *Pub. Sch. Ret. Sys. of Missouri*, the Eighth Circuit unequivocally held that the test for whether an entity is an arm of the state under the diversity statute is the same as the test governing the applicability of Eleventh Amendment immunity. 640 F.3d at 826–27. Indeed, every Circuit

---

[2] Corizon does cite *United States ex rel. Fields v. Bi–State Dev. Agency of the Missouri–Illinois Metro. Dist.*, 829 F.3d 598, 600 (8th Cir. 2016) (*Bi–State I*) to seemingly argue that the arm-of-the-state analysis for Eleventh Amendment immunity may produce different results than the citizenship test under § 1332(a)(1). On its face, *Bi–State I* does recognize that whether an entity is a "person" under the False Claims Act ("FCA") is a different inquiry from whether that entity is entitled to Eleventh Amendment immunity, despite both turning on the traditional arm of the state test. *Id.* But Corizon has not explained—and the Court does not see—how that reality impacts the interpretation of the diversity statute. The Eighth Circuit, and the Supreme Court case to which it cited, recognized only that first a plaintiff proves that the FCA applies to the defendant (using the arm of the state test), and then, if it does, the defendant may raise and prove an immunity defense (using the same test). *Id.* While the arm of the state test may be implicated in both, the only indication that it might produce different results in the FCA context is that the plaintiff bears the burden to first prove personhood under the statute. After that, the burden switches to the defendant to prove immunity. *Id.* Indeed, despite making this observation, in dicta, the Eighth Circuit ultimately affirmed first that the defendant was a "person" (and therefore not an arm of the state) under the FCA, and later, not an arm of the state for the purposes of sovereign immunity. *United States ex rel. Fields v. Bi–State Dev. Agency of Missouri–Illinois Metro. Dist.*, 872 F.3d 872, 876 (8th Cir. 2017) (*Bi–State II*). Despite Corizon's suggestion that *Bi–State I* holds that the arm of the state test can produce different results, *Bi–State* itself did not produce divergent findings, or suggest how divergent findings could occur, beyond the different burdens involved at each step. Nor does Corizon cite *any* case in which a court applied the arm of the state test to separate analyses to reach different results in the same case. At bottom, the Eighth Circuit, and indeed many circuits, have unquestionably held that the arm-of-the-state analysis for the citizenship test under § 1332(a)(1) is the same as the test for Eleventh Amendment immunity. *Pub. Sch. Ret. Sys. of Missouri*, 640 F. 3d at 826–27 & n.3.

to address the issue has held that the analysis is practically identical, and the Court found no case holding, or even suggesting, a difference. *See, e.g.*, *Maryland Stadium Authority v. Ellerbe Becket Inc.*, 407 F.3d 255, 260–61 (4th Cir. 2005); *N.E. Fed. Credit Union v. Neves*, 837 F.2d 531, 534 (1st Cir. 1988) (tests "pretty much the same"); *Coastal Petroleum Co. v. U.S.S. Agri–Chems.*, 695 F.2d 1314, 1318 (11th Cir. 1983) (analysis is "the same"); *Tradigrain, Inc. v. Mississippi State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983) (analysis is "virtually identical"); *see also Kansas Public Employees Retirement System v. Boatmen's First Nat. Bank of Kansas City*, 982 F. Supp. 806, 809 (D. Kan. 1997) (applying Eleventh Amendment test to find that public retirement system is an alter ego of the state of Kansas, and, "therefore, is not a 'citizen' for the purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332.").

### b. Whether the Court Must Reevaluate the University's Status as an Arm of the State

What's more, courts need not start from scratch each time an entity claims to be an arm of the state. *Ormerod v. Curators of Univ. of Missouri*, 97 F. App'x 71, 72 (8th Cir. 2004) (holding district court did not need to reevaluate whether the University was an arm of the state when the plaintiff failed to show that the University's position was in any way different from previous cases); *World Trade Ctr. Properties, L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 162 (2d Cir. 2003)[3] (holding, without further analysis, that, because Port Authority had consistently been denied Eleventh Amendment immunity, it was not an arm of the state for purposes of the diversity statute). Because the University has consistently—and uniformly—been found to be an arm of the state, the Court begins with the strong presumption that it remains one in this case. *Treleven v. University of Minnesota*, 73 F.3d 816, 818–19 (8th Cir. 1996) (holding that the district court "had no need to consider the [Eleventh Amendment immunity] factors; it had before it the prior

---

[3] Abrogated on other grounds by *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006)

decisions of this Court adjudicating the question of the University's relationship with the state.").
Corizon has identified no structural changes between the University and the State of Missouri that
would suggest it appropriate to revisit the University's status as an arm of the state. *Id.* at n.3; *see
also United States ex rel. Fields v. Bi–State Dev. Agency of Missouri–Illinois Metro. Dist.*, 872
F.3d 872, 877 (8th Cir. 2017) (reassessing the status of the arm of the state entity because counsel
argued that there had been material changes impacting the Eighth Circuit's previous conclusion).

The only change Corizon identifies is that "it is not at all clear why a recovery at an
individual health care facility could benefit the state treasury" because "Plaintiffs have not alleged
that payments received go to the state treasury." Doc. 18, at 5. Corizon's argument ignores the
long-since established relationship between the University and the State of Missouri. First, it
appears Corizon implies that because the University is involved in this case only through the
University Physicians and the University of Missouri Health Care (together, "MU Health")—both
operated by the University as part of its academic health system—on the facts of this case, recovery
would not benefit the State. As an initial matter, this argument has been rejected in the past; the
Eighth Circuit has recognized that universities, acting through hospital systems analogous to the
one at issue here, are arms of the state. *Walstad v. Univ. of Minnesota Hosps.*, 442 F.2d 634, 641–
42 (8th Cir. 1971) (finding immunity under the arm of the state test because "the University of
Minnesota Hospitals are of course a part of the Medical School of the University."); *see also
Treleven,* 73 F.3d at 818–19.

Furthermore, as this Court has consistently recognized, the University comingles the funds
it receives from all streams—including the profits of MU Health—and a significant portion of the
University's total operating budget is comprised of funds received from those programs. *Sherman
v. Curators of Univ. of Missouri*, 871 F. Supp. 344, 345–46 (W.D. Mo. 1994); *see also Scherer,*

49 F. App'x at 658–59 (citing *Sherman* to hold University is an arm of the state). Corizon owes more than $12,000,000.00 under its contract with the University. Some of that money is directly payable to the University, not Capital Region. *See* Doc. 1-1, at 16–18 (describing services to be provided by MU Health and University Physicians, as opposed to Capital Region). It is certainly more likely than not that recovering even a portion of the amount owed would have a potential benefit to the State treasury. *Pub. Sch. Ret. Sys.*, 640 F.3d at 827.

What was true in *Sherman* is still true now: the University's finances are inextricably linked with the State. *Sherman*, 871 F. Supp. at 347. The Missouri Constitution requires the State to "adequately maintain" the University. *Id.* State appropriated funds certainly provide a large portion of the University's operating budget, and the State carefully calibrates the University's appropriations based upon the University's reported needs. *Id.* at 346. The University's needs are necessarily impacted by the funds it receives from other sources, including the profits from the hospital and clinical programs run through MU Health. If the University fails to recover the money owed to MU Health under its contract with Corizon, it will ultimately fall to the State of Missouri, as part of its constitutional duty to "adequately maintain" the University, to make up the difference. *See Sherman*, 871 F. Supp. at 347; *cf. Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987) ("If a judgment were awarded against Purdue, the state treasury would not write out a check to [plaintiff]. But [because] Purdue is by design dependent on state appropriations, which are evidently carefully geared through close oversight to meet the changing financial needs of the university, it is apparent that the payment would directly affect the state treasury."); *Van Pilsum v. Iowa State Univ.*, 863 F. Supp. 935 (S.D. Iowa 1994) (finding that even though less than 40% of a university's budget came from the state, any judgment would ultimately affect the state treasury by influencing state appropriation and budgeting decisions). Corizon offers nothing to suggest

that the University's relationship with State is materially different in this case, where it acts as a plaintiff, such that that this Court should be the first to hold the University is not an arm of the state.

Accordingly, the University is an arm of the state, and is not a "citizen" for the purposes of the diversity statute.

### c. Whether the University is a Real Party in Interest

Corizon also argues that Capital Region, not the University, is the real party in interest. The Court disagrees. Even assuming that payments owed to Capital Region, an affiliate of the University, do not benefit the University, the University itself directly provides, and is then compensated for, certain services under the Agreement independent of Capital Region. Doc. 1-1, at 16–18. Because Corizon potentially owes the University money under the Agreement, the University is certainly a real party in interest. Corizon cites only *State of Mo. ex rel. Webster v. Freedom Fin. Corp.* to argue that the University is not the party in interest. 727 F. Supp. 1313, 1316–18 (W.D. Mo. 1989). *Webster* stands only for the unremarkable proposition that the "real party in interest" is the party who, under the governing substantive law, is entitled to enforce the right asserted, and that in a diversity case, the governing substantive law is ordinarily state law. *Id.* at 1316. The *Webster* court found that, under Missouri law, one test to determine whether a party is proper is to determine if the party "has some actual and justiciable interest susceptible of protection by the suit." *Id.* The *Webster* Court concluded that the State of Missouri had perceptible interests in enforcing its consumer protection statutes, independent of the interests of the affected consumers. *Id.* at 1317.

While Corizon argues that Capital Region benefits from payments made under the Agreement, this argument does nothing to defeat the University's role as a real party in interest.

The University signed the Agreement with Corizon on its own behalf, the University receives direct compensation from Corizon under the agreement, and the University certainly has an interest in Corizon's performance under the Agreement. While Capital Region does also offer services, Capital Region is affiliated with the University, and the University offers some of its services through Capital Region. In short, the University, as a signatory to the Agreement, may enforce its rights under the Agreement and is a real party in interest in this case; Capital Region's involvement in the Agreement does nothing to change that.

### B. Whether Diversity is Destroyed by the University

Corizon's final defense is that, even if the University is an arm of the state, because Plaintiff Capital Region and the Corizon defendants are diverse, this Court's diversity jurisdiction remains intact. Corizon paints this issue as unsettled, attempting to distinguish this case from the "settled" body of law that, to Corizon, holds only that when *all* plaintiffs or *all* defendants are states or their alter egos, the federal courts lack diversity jurisdiction. Doc. 18, at 7. Corizon argues that nothing in the diversity statute requires that "every party must be a citizen of a state for jurisdiction to exist." *Id.* Instead, to Corizon, "if all plaintiffs and defendants who *are* citizens of a state are citizens of different states, then the lawsuit 'is between citizens of different States[,]'" even if the University is effectively "stateless." *Id.* (quoting 28 U.S.C. § 1332(a)(1)).

The Court disagrees. Indeed, first principles of federal diversity jurisdiction squarely foreclose Corizon's argument. As an initial matter, the diversity statute plainly requires that, for a federal court to have original diversity jurisdiction over an action, it must be between "citizens of different states." 28 U.S.C. § 1332(a). Corizon's interpretation, in substance, asks the Court to endorse a "minimum diversity" regime by which if one set of parties satisfies the requirements of the diversity statute, a federal court has jurisdiction. That is not—and, at least since 1806, has not

been—the Supreme Court's interpretation of the diversity statute. 13E CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3605 (3d ed., Apr. 2022 Update). Instead, complete diversity is required.

Accordingly, the requirements of diversity must be met by *each* party. *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 829 (1989). The Supreme Court strictly construes the requirements of the diversity statute. *See generally id.* For example, in *Newman–Green*, an Illinois corporation sued a Venezuelan corporation, four Venezuelan citizens, and William Bettison, a United States citizen domiciled in Venezuela, invoking diversity jurisdiction under 28 U.S.C. §1332(a)(3), which permits suit between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." *Id.* at 828. Mr. Bettison was not a "citizen of a state" for the purposes of the diversity statute because, despite his U.S. citizenship, he was not domiciled in any state. *Id.* The plaintiff could not rely on § 1332(a)(2), which permits suit between citizens of a state and citizens or subjects of a foreign state, either, because Mr. Bettison was, despite residing in Venezuela, a United States citizen. *Id.* "Bettison's 'stateless' status destroyed complete diversity under § 1332(a)(3), and his United States citizenship destroyed complete diversity under § 1332(a)(2)." *Id.* Accordingly, no path to diversity jurisdiction existed. None of this was controversial; instead, the issue was only whether Mr. Bettison could be severed from the case to preserve jurisdiction. Otherwise, the entire case—including the claims against defendants who otherwise satisfied the diversity statute—had to be dismissed. *Id.* at 828–31. This case illustrates why Corizon's position is untenable.

Corizon argues that diversity exists even if the University is an arm of the state, because Capital Region and the Corizon Defendants are diverse, and "nothing [in the statute] suggests that every party must be a citizen of a state for jurisdiction to exist." The same logic would have saved

the plaintiff's claim against Mr. Bettison in *Newman–Green*. 28 U.S.C. § 1332(a)(2) permits suits between citizens of a state and citizens or subjects of a foreign state. By Corizon's logic, the statute did not require that *all* defendants must be foreign citizens; it should have been enough that the plaintiff was a citizen of a state and some of the defendants were foreign citizens. The Supreme Court rejected that interpretation without hesitation, just as it had previously rejected the proposition that it was enough that some, but not all, defendants were diverse from a citizen plaintiff. *Newman–Green,* 490 U.S. at 828–831; *Walker by Walker v. Norwest Corp.*, 108 F.3d 158, 161–62 (8th Cir. 1997) (finding that plaintiffs' argument that nondiverse defendants did not destroy diversity because some defendants were diverse was not only wrong, but it was also sanctionable under Rule 11).

Given this foundation, it makes sense that every court to consider this issue has disagreed with Corizon. *See, e.g.*, *Pigg v. Harris*, 20-30546, 2021 WL 6102531, at *1 (5th Cir. Dec. 23, 2021) (dismissing case because Louisiana Department of Natural Resources was an arm of the state and its presence destroyed diversity, even when otherwise diverse defendant remained); *Maryland Stadium Auth.*, 407 F.3d 255, 260, n.7 (4th Cir. 2005) ("Thus, if one party to an action is not a citizen . . . the district court does not have jurisdiction of the action under § 1332, even if all other parties to that action are citizens of different states."); *Long v. District of Columbia*, 820 F.2d 409, 416 (D.C. Cir. 1987) (finding that unless the District of Columbia, a "stateless" entity under the diversity statute, was dismissed, federal diversity jurisdiction did not exist for plaintiff's suit, even with a diverse codefendant).[4] This case presents nothing more than another

---

[4] *See also Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 921 F. Supp. 2d 158, 160 (S.D.N.Y. 2013) ("[E]very court to address the question, including the Second Circuit, has held that the initial inclusion of an arm of the state *destroys* complete diversity where it would otherwise exist." (emphasis in original)); *Tomback v. UnumProvident Corp.*, 2005 WL 2596449, at *3–4 (N.D. Cal. Oct. 13, 2005) (finding no diversity jurisdiction due to inclusion of the California

manifestation of the complete diversity rule. Accordingly, contrary to Corizon's assertion, the University's inclusion does plainly and unambiguously destroy the Court's diversity jurisdiction.

### C.  Whether Jurisdictional Discovery is Warranted

Corizon asks for jurisdictional discovery to explore the State's relationship with MU Health and the funds that it generates. At its discretion, a district court may permit jurisdictional discovery "to ascertain facts bearing on [the court's jurisdiction]." *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016). However, it need not do so when the party seeking discovery does not dispute facts central to the Court's jurisdictional conclusion or offers only speculation about what discovery will produce. *See Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011). Here, Corizon's focus on the individual healthcare facilities involved in the contract is misplaced, and the discovery it seeks is wholly speculative.

First, this lawsuit is brought on behalf of the University itself, not just MU Health or any individual medical center. That the State is not directly involved with the provision of healthcare or hospital administration is irrelevant. The State does not directly manage the University's curricular offerings or the professors who facilitate them either. Nevertheless, the University system as a whole, including its governing administration, is still inextricably linked with the State

---

Commissioner of Insurance in a suit against diverse insurers); *Jakoubek v. Fortis Benefits Ins. Co.*, 301 F. Supp. 2d 1045, 1049 (D. Neb. 2003) (concluding that inclusion of state defendants, if they were proper defendants, destroyed diversity, even if a diverse defendant remained in the case); *Wilkerson v. Missouri Dept. of Mental Health*, 279 F. Supp. 2d 1079, 1080 (E.D. Mo. 2003) (inclusion of state agency destroyed diversity, despite presence of diverse codefendant); *Bosse v. Pitts*, 455 F. Supp. 2d 868, 875 (W.D. Wis. 2006) (remanding case when one plaintiff was arm of state, even when other plaintiff and defendants would have satisfied diversity); *Kansas State Univ. v. Prince*, 673 F. Supp. 2d 1287, 1293 (D. Kan. 2009) ("The State's presence in this suit is not ignored, however . . . Rather, if the State of Kansas [through Kansas State University] is the real party in interest bringing this action then its presence destroys diversity jurisdiction, because the statute requires a suit between *citizens* of different states." (emphasis in original)).

of Missouri, even if certain University functions are—and logically must remain—beyond the day-to-day involvement of the State. *See generally Hoeffner v. Univ. of Minnesota*, 948 F. Supp. 1380, 1388 (D. Minn. 1996) (finding individual characteristics of university hospitals, clinics, and medical programs irrelevant; "[h]ere, the Plaintiffs have sued the University as a whole and, therefore, they seek a declaration that, as a whole, the University [is not an arm of the state under] the Eleventh Amendment. With a recognition of the Plaintiff's goal, the evidence of Record overwhelmingly demonstrates that the University and the State remain inextricably interwoven in a closely entwined relationship.").

Corizon's proposed discovery into MU Health's finances is similarly unnecessary. The Eighth Circuit has already established that "whether a money judgment in this particular case will actually benefit the State of Missouri's treasury is not the relevant inquiry;" instead, the Court must focus on a potential benefit. *Pub. Sch. Ret. Sys. of Missouri*, 640 F. 3d at 830. As already explained, recovery in this case has the potential to benefit the State of Missouri's treasury. While Corizon argues that it needs discovery to determine how funds from MU Health and Capital Region affect the University's finances, the relevant facts have been previously established and are further publicly available, should Corizon wish to investigate them. While the granular financial information Corizon seeks may not be public, it is enough that the University's overall budget is supported, in substantial part, by proceeds from MU Health. Funds from *all* the University's revenue streams are comingled and used to meet *all* the University's expenses. If the University's revenue from MU Health is decreased, the State—through its Constitutional obligation to adequately maintain the University—would be required to make up the difference. Proceeds owed to MU Health under the University's contract with Corizon certainly impacts the

revenue that MU Health generates. Corizon has not suggested that any of these foundational facts have changed, nor will the discovery Corizon seeks impact them.

Accordingly, Corizon's request for jurisdictional discovery is DENIED as unnecessary and speculative. At bottom, the facts necessary to this Court's jurisdictional analysis are already established, and Corizon's proposed discovery does nothing to suggest they have since changed. *See Viasystems, Inc.*, 646 F.3d at 598 (affirming denial of jurisdictional discovery because proposed topics would not ultimately support jurisdiction and the plaintiff's assertion that discovery "would likely" reveal facts supporting jurisdiction was "entirely speculative").

### D. Whether Fees Are Appropriate

"An order remanding [a] case may require [the removing defendant to pay] just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The reasonableness standard was ultimately the result of balancing "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id*. at 140.

Corizon suggests fees are unwarranted in this case because the case presented an "unusual posture" and "unsettled law." Doc. 18, at 7–8. The University counters that Eighth Circuit precedent clearly establishes that the University is an arm of the state and that an arm of the state is not a citizen for the purposes of diversity. Doc. 21, at 2–4. It further notes that Corizon knew the University's position on removal because it was established in the state court petition; as such,

Corizon could have easily discovered the state of the law before removing.  Doc. 8 at 7.  Corizon ultimately maintains that it was not required to accept the University's legal conclusions, especially because the cases the University cited were all decided in the immunity context.  Doc. 18, at 8.

Here, Corizon's argument is little more than a recognition that the Eighth Circuit has not decided a case exactly like this one before.  Even still, a review of Corizon's arguments demonstrates that removal was objectively unreasonable.

Corizon first argued that the University could be an arm of the state for the purposes of Eleventh Amendment immunity, but a citizen for the purposes of diversity jurisdiction.  Corizon cited only one case to support its argument.  Doc. 18, at 4 (citing *United States ex rel. Fields v. Bi–State Dev. Agency of the Missouri–Illinois Metro. Dist.*, 829 F.3d 598 (8th Cir. 2016) ("*Bi–State*").  That case, at best, suggested that the arm of the state test could perhaps produce different results in the FCA context.  *Bi–State*, 829 F.3d at 600.  Even so, the application of the arm of the state test in that case did not actually produce different results, or suggest how it might do so, beyond that the relevant statutory and immunity questions involved different burdens of proof.  And, perhaps more importantly, Corizon never attempted to apply the reasoning of that case to the diversity statute; it just cited the case to suggest, somehow, that not only *could* the Court conclude that the University was an arm of the state for the purposes of immunity and a citizen for the purposes of diversity, but that it *should*.  Doc. 18, at 2.

Corizon's arguments ignored the universal consensus—in this Circuit and beyond—that (1) an arm of the state is not a citizen under the diversity statute, regardless of its role in the lawsuit; (2) to determine whether an entity is an arm of the state for the purposes of diversity, the Court's analysis is functionally identical to its immunity analysis; and (3) that prior judicial determination

of an entity's relationship with the state removes any obligation to revisit the entity's status, unless a party can identify meaningful changes in the relationship. Corizon identified no meaningful change in the University's relationship with the State. It simply argued that because the State was not directly involved with the funds and management of the hospital involved in the Agreement, the University was not acting as an arm of the state in this instance. By doing so, Corizon both ignored the proper analysis of the arm of the state test and demonstrated a misunderstanding of the very contract by which it is bound. As even a cursory reading demonstrates, the University itself provides certain services independent of Capital Region—and the University itself is to be compensated for them.

Perhaps even more surprising is Corizon's assertion that the presence of an arm of the state does not destroy diversity when the remaining parties are diverse. Corizon argues that no *binding* case in this circuit has held so explicitly. Even so, Corizon recognizes that several other district courts have. Nevertheless, Corizon argues that this Court should not follow suit because, in those cases, the courts merely assumed "that there is no difference between an arm of a state being the *exclusive* plaintiff or defendant, and an arm of the state being *a* plaintiff or defendant." Doc. 18, at 7 (emphasis in original). Of course, the extent of Corizon's analysis is limited to quoting the diversity statute and Eighth Circuit case law identifying the concept of complete diversity for citizen parties. As explained above, this conclusion flies in the face of (1) the decision of every district and circuit court to address the issue and (2) the Supreme Court's interpretation of the complete diversity requirement—established for the first time over two centuries ago.

Of course, simply making a losing argument will not saddle a defendant with fees. However, even losing arguments must be supported and made in good faith. Here, Corizon's conclusory arguments that the Court should adopt its positions, simply because the cases cited by

the University were decided in different contexts, are not enough. Corizon does not address the University's underlying reasoning or the mountain of authority—from this Circuit, beyond, and black letter law[5]— that squarely foreclose its arguments. This is not the first time a plaintiff state university has sued a defendant on a state law claim. Nor is it the first time that a defendant tried to remove to federal court in such a case. Each time—if that state university was truly an arm of the state and the party in interest—the case was remanded. Had Corizon looked, it would have found these cases. Had Corizon attempted to reason around these cases with a good faith argument, fees might not be warranted. However, here, Corizon knew the University's argument from the start, and still offers little to support its decision to remove. For that, the Court cannot say that Corizon had a reasonable basis to remove. Reasonable fees and costs are warranted.

## IV. CONCLUSION

For the reasons discussed above, the University's Motion to Remand, Doc. 7, is GRANTED, and Corizon shall pay the reasonable attorneys' fees and costs the University incurred litigating its Motion to Remand.

Dated: 9/9/2022
Jefferson City, Missouri

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

---

[5] *See, e.g.*, 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3723 (4th ed., Apr. 2022 update.) ("Since it is well established that a state is not a 'citizen' of any state, it follows that when a state is a real party in interest, the case cannot be removed on the basis of diversity jurisdiction.").